## J. B. Weston v. C. H. Brown.

[Filed October 21, 1890.]

1. **Witnesses:** Refreshing Memory.   A witness should not be permitted to use memoranda to refresh his memory unless such memoranda were made at or near the time the transactions occurred.

2. **Interest:** Unsettled Accounts do not bear interest until six months after the date of the last item therein.

3. **Instructions.**  The fourth and fifth  paragraphs of the instructions given by the trial judge to the jury, *held*, erroneous.

Error  to  the  district  court  for  Gage  county.    Tried below before Broady, J.

*Griggs & Rinaker,* for plaintiff in error.

*E. O. Kretsinger, contra,* cited :  *S. C. & P. R. Co. v. Brown,* 13 Neb., 317 ; *B. & M. R. Co. v. Schluntz,* 14 Id., 425 ; *R. Co. v. Finlayson,* 16 Id., 581 ; *R. V. R. Co. v. Fink,* 18 Id., 93 ; *Schuyler Nat'l Bk. v. Bollong,* 24 Id., 825.

Norval, J.

About the first of October, 1884, the plaintiff in error, who then resided in Lincoln, employed the defendant in error to superintend the construction of a dwelling house in the city of Beatrice, for the agreed price of $3.50 per day.   Brown entered upon his duties, having entire charge of the construction of the building, employing the men under him, and the keeping of their time.   He claims to have put in 358 days' regular time of ten hours per day, 180 hours' overtime as superintendent, in addition to other labor, and to have paid out moneys at various times for Weston.   Brown made no demand for payment of the

39

alleged balance until more than a year after the house was completed, when he presented to Weston the following bill:

BEATRICE, NEB., May 1, 1887.

J. B. WESTON, in account with C. H. BROWN.

| | | |
|---|---:|---:|
| Nov. 1, '84, to making estimates on house and barn..................................................... | $5 | 00 |
| Jan. 1, '85, staking out foundation and putting in stone work...................................... | 10 | 00 |
| Jan. 1, '85, making out bills and correspondence. | 7 | 00 |
| April 17, '86, to time on house, barn, etc., as superintendent and builder, 358 days, at $3.50 per day................................................ | 1253 | 00 |
| April 17, '86, to overtime, 180 hours, or 18 days, at $3.50 per day............................. | 63 | 00 |
| April 17, '86, to money paid out at sundry times for drayage, etc........................................ | 116 | 75 |
| April 17, '86, to balance on house and barn, as per detailed bill...................................... | 44 | 00 |
| Total ..............................................$ | 1498 | 75 |

CR.

| | | |
|---|---:|---:|
| By cash at various times.............................. | $950 | 00 |
| By balance on benches, trestles, etc................. | 50 | 00 |
| Total .........................................$ | 1000 | 00 |
| Balance.................................................. | 498 | 75 |

This action was brought to recover the balance claimed to be due the plaintiff on this account.

The defendant, for answer, interposed a denial of all indebtedness, and pleaded a set-off and counter-claim. The set-off is as follows:

C. H. BROWN to J. B. WESTON, Dr.

| | | |
|---|---:|---:|
| To cash at sundry times, as per bill................$ | 1093 | 00 |
| To merchandise, brushes, etc........................ | 42 | 16 |
| To merchandise, benches, etc........................ | 75 | 00 |
| To office rent......................................... | 32 | 00 |
| To work by George Stump............................ | 6 | 00 |
| Total ..........................................$ | 1248 | 16 |

The counter-claim set up in the answer is for damages claimed to have been sustained by the defendant, by reason of the plaintiff unnecessarily impeding and delaying the work in the construction of the defendant's house.

The reply was by a general denial.    The cause was tried to a jury, with verdict and judgment for the plaintiff for $204.

Upon the trial the plaintiff Brown testified, in chief, to the correctness of his account.    His cross-examination disclosed that the defendant Weston was present during the progress of the work but a small portion of the time; that the plaintiff had entire charge of the work, employed the men under him, who drew their pay each week, the plaintiff keeping their time, and that the plaintiff each Saturday night received usually the sum of $20.    The plaintiff further testified that he put in 354 days' regular time between February 28, 1885, and April 17, 1886, or worked every week day and holiday between those dates, and put in 180 hours' overtime.    It also appears from the testimony that between those dates the plaintiff worked for one Van Buskirk from twenty to thirty days.

The defendant introduced testimony tending to show that the plaintiff did not expedite the work, but negligently prolonged it, and that he did not put in full time.    There also appear in evidence vouchers signed by the plaintiff for moneys received by him, aggregating $1,093.    The entire carpenter work on the job amounted to $3,500. The defendant called as witnesses several carpenters and builders, some of whom worked on the house, who testified that the carpenter work, allowing the superintendant $3.50 per day, should not have cost to exceed $2,500.

The rebutting testimony was to the effect that the plaintiff was a competent and faithful superintendent.

It is impossible for any one to read the testimony in this case without reaching the conclusion that the account stated by the plaintiff in his petition is incorrect.    In that

account he gives the defendant credit with cash payments aggregating $950. On the trial he is confronted with vouchers signed by himself, amounting to $1,093. He charges in his account for every week day from February 28, 1885, to April 17, 1886, including holidays. He admitted, upon cross-examination, that between these dates he worked on the house of one Van Buskirk thirty-two days. In addition, the plaintiff charges for 180 hours for working overtime. There is no testimony in the bill of exceptions that entitles him to charge for extra time. There is no pretense that the parties ever agreed to such a thing, or that the defendant had any knowledge that the plaintiff was working more than ten hours a day. The first intimation that Weston had that Brown claimed pay for extra time put in was more than a year after the house was completed. Besides there is in the record testimony showing that it is customary for the one who superintends the construction of a building to work more than ten hours a day without charging for overtime.

The charge in plaintiff's account of $116.75 is made up of over eighty small payments of money, which plaintiff claims to have made for the defendant from December 1, 1884, to April 17, 1886. The plaintiff was permitted to testify as to these items over the defendant's objection and exception, by refreshing his memory from a paper held by the witness, which was made out after the building was completed, from a memorandum kept by the plaintiff at the time the transactions occurred. This ruling of the court was clearly erroneous. The paper was not made at or recently after the transactions took place, but months afterwards. (*Schuyler Nat'l Bank v. Bollong,* 24 Neb., 825.)

It is urged that the court erred in giving the fourth and fifth instructions.

"4. As to amounts, if any, which you allow on any of the claims alleged in the petition or answer, you should allow and include interest thereon at seven per cent per annum from the time the same became payable.

"5. Expert testimony is the opinions of witnesses on special subjects in which they are presumed to have special or unusual knowledge. In general, testimony is to facts only, but one exception to the general rule is expert testimony, which is as to the opinions of the experts. Such testimony must receive just so much weight and credit as. the jury deem it entitled to when viewed in connection with all the evidence, and no more. Upon the jury rests the responsibility of rendering a correct verdict, and if the testimony of experts is opposed to the jury's conviction of truth, it is their duty to disregard it. Such evidence, as all evidence of opinions, ought to be considered with careful scrutiny and with much caution."

This suit is upon an unsettled account covering transactions between the parties for a period of more than a year. Unsettled accounts do not draw interest until the expiration of six months after the date of the last item. (Comp. Stats., ch. 44, sec. 4.) The fourth instruction was therefore erroneous.

The fifth instruction was given with especial reference to the testimony of the mechanics, introduced by the defendant, to show what the carpenter work on the h u c and barn should have cost. The object of this testimony was to show, not only that the plaintiff did not work the time claimed by him, but to establish that he did not expedite the work but purposely prolonged it to further his own interests. While the testimony of these witnesses as to how much the house should have cost was, in a certain sense, expert, the jury should not have been told what weight should be given it. The witnesses being experienced mechanics who had seen the house—some of them aiding in its construction—could tell with considerable certainty what it was worth to do the work.

The court, after cautioning the jury that the responsibility of rendering a correct verdict rested upon them, follows it with the statement in substance that it was their

duty to consider the testimony of these witnesses with much caution. Their testimony was so discredited by the charge of the court that the jury might well have understood that it was their duty to entirely disregard it. The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.