State of Iowa v. Chester McCullough, Appellant.

**Kleptomania:** INSTRUCTIONS. An instruction on the issue of kleptomania as a defense in a prosecution for larceny, that the practical question to be determined was whether avarice or greed, or insanity, was the controlling force which led to the commission of the offense, is improper, as setting off avarice and greed against insanity, as though these qualities indicated a sound mental condition; since kleptomania is a weakening of the will power to such an extent as to leave the afflicted one powerless to control his impulse to appropriate the personal property of others, without regard to whether such impulse is inspired by avarice or greed, or other motives.

**Same:** *On expert testimony.* A statement, in an instruction on expert testimony in a criminal prosecution, that, while the profession of law has not fully kept pace with that of medicine on the subject of insanity, medical authorities have propounded doctrines respecting it as an excuse for criminal acts which a due regard for the safety of the community and an enlightened public policy must prevent juries from adopting as the law of the land is improper criticism.

*Appeal from Mitchell District Court.*—HON. J. F. CLYDE, Judge.

WEDNESDAY, OCTOBER 9, 1901.

DEFENDANT was found guilty of the crime of larceny, and appeals from the judgment rendered on the verdict.— *Reversed.*

*L. M. Rice* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Chas. A. Van Vleck,* Assistant Attorney-General, for the State.

WATERMAN, J.—The defense was insanity. Defendant had been three times convicted of like offenses, before a justice of the peace, prior to the commission of the crime, in question. The property taken on the occasion under consideration was a schoolbook, of the value of 75 cents. Defendant, who was 18 years of age, was a pupil in the high school of Osage, bright and industrious in study, leading some of his classes. The book was taken from the desk of a fellow pupil and exchanged at a store in the city for a fishing reel or clothes brush. The evidence in the case on the part of defendant was all directed to his mental condition. It was shown that three of his brothers or sisters were idiotic; that he had become addicted to self-abuse, and his behavior at times was peculiar; that he possessed an inordinate desire for possessing himself of articles of personal property, with no regard to any special value they might have, and for many of which he could have no use. A list of the property found in his possession is set out in the record. Many of the articles were stolen by him. It is too lengthy to give *in extenso.* We enumerate sufficiently to convey an idea of the character of the accumulation: 14 silverine watches, 2 old brass watches, 2 old clocks, 25 razors, 21 pairs of cuff buttons, 15 watch chains, 6 pistols, 7 combs, 34 jackknives, 9 bicycle wrenches, 4 padlocks, 7 pair of clippers, 3 bicycle saddles, 1

box old keys, 4 pairs of scissors, 5 pocket mirrors, 6 mouth organs, rulers, guns, bolts, calipers, oil cans, washers, punches, pulleys, spoons, penholders, ramrods, violin strings, etc. Several expert witnesses were introduced, who testified in response to hypothetical questions, and the effect of what they said was that defendant was insane, being afflicted with that form of mental disease known as kleptomania. We have said enough to indicate the importance of this issue in the case. We turn now to two instructions given by the trial court, and the correctness of which is challenged. After stating to the jury that the burden was upon defendant to establish insanity, the court proceeds: "On this issue, you are instructed that partial insanity is not always a defense against a criminal charge. The nature, character, and degree of insanity which exonerates a party from criminal responsibility are not easily explained or understood. It is not necessary that it should be shown by the evidence that the defendant, at the time of the commission of the acts, did not know right from wrong as to his acts in general. The inquiry must be directed to the acts charged in the indictment. If you believe from the evidence that the acts charged in the indictment were done by the defendant at a time when he was over the age of 18 years, but were caused by mental disease or unsoundness which dethroned his reason and judgment with respect to those acts, which destroyed his power rationally to comprehend the nature and consequences of said acts, and which, overpowering the will, inevitably forced him to their commission, then he is not in law guilty of the crime charged, and you should so find by your verdict. But if you believe from all the evidence and circumstances in the case that the defendant, at a time when he was over the age of 18 years, committed the acts charged in the indictment, and that he then rationally understood the nature and consequences of said acts, and was not driven to them by an insane and irresistible impulse, but committed said acts through excessive greed or avarice, then he cannot claim for such acts

the protection of insanity, and is guilty as charged in the indictment. The practical question for you to determine, from all the evidence, is whether avarice and greed, or insanity, was a ruling force and controlling agency which led to the commission of the acts charged. If you believe that said acts were the result and offspring of insanity, you should acquit; if of avarice or greed, you should convict." A number of objections are urged to this instruction. We see no error but that of setting off avarice and greed against insanity, as though these qualities necessarily indicated a sound mental condition. Kleptomania is, as here defined, an irresistible desire to steal. It is, as we understand, a weakening of the will power to such an extent as to leave the afflicted one powerless to control his impulse to appropriate the personal property of others, without regard to whether such impulse is inspired by avarice, greed, or idle fancy. In all other respects than the one mentioned, the rule announced in this instruction is sustained by prior decisions of this court. *State v. Felter,* 25 Iowa, 67; *State v. George,* 62 Iowa, 682; *State v. Mewherter,* 46 Iowa, 88.

II. A part of the seventh instruction, to which exception is taken, is as follows: "Medical men have been called as experts by the defendant, to give an opinion as to the mental condition of the defendant at the time of the acts charged in the indictment. These opinions will be of greater or less aid to you in your deliberations, depending very much on the skill, knowledge, and experience of the witness, and his acquaintance with the subject under investigation. It will readily occur to you that this kind of evidence may be found quite reliable and satisfactory, or the reverse, and entitled to little, if any, consideration. It may further be remarked, too, in regard to evidence which is made up largely of mere theory and speculation, and which suggests mere possibilities, that it ought never to be allowed to overcome clear and well-established facts. *In this connection I deem it proper to say that, while, perhaps, the profession of law has not fully*

*kept pace with that of medicine on the subject of insanity, medical authorities have propounded doctrines respecting it as an excuse for criminal acts which a due regard for the safety of the community, and an enlightened public policy, must prevent juries from adopting as a part of the law of the land."* It is said by appellant that this is an unfair criticism of the expert testimony, and that the jury should have been allowed to consider all the evidence, and to accord to the testimony of each witness such force and effect as they deemed proper, uninfluenced by reflections from the court tending to discredit it. We have approved an instruction telling a jury the unsatisfactory character of expert evidence relating to handwriting. *Whitaker v. Parker*, 42 Iowa, 585. But such evidence is of a peculiar nature. One man is but little better qualified than another to give it, and the rule of the cited case cannot properly be applied to all opinion testimony. The value of opinion evidence such as is before us is generally for the jury alone. Rogers Expert Evidence, section 41. Usually the court must not, in its instructions, underrate or detract from the weight of such opinions. *Eggers v. Eggers*, 57 Ind. 461; *Cuneo v. Bessoni*, 63 Ind. 524; *Weston v. Brown*, 30 Neb. 609 (46 N. W. Rep. 826). Practically the whole defense in this case rested upon the opinions of experts. They were men of a high degree of skill and long experience in treating mental ailments. The entire subject is peculiarly technical and unfamiliar to the common mind. While the jury were to pass upon the weight of the opinions in the light of all the facts, they should have been permitted to take such opinions fairly, and consider them without detraction by the court. See *Brush v. Smith*, 111 Iowa, 217. It is true that in *State v. Hockett*, 70 Iowa, 446, an instruction identical in language with the one under consideration was approved; but we think that case can be distinguished from this; and, inasmuch as this court, as now constituted, would not approve the reasoning there employed if the question were a new one, we are not,

inclined to apply the rule announced to any save a similar state of facts. In the *Hockett ccse* the expert witnesses testified, as appears from the opinion, wholly in response to hypothetical questions, while here two of the experts had personally examined the defendant, and one of them based his opinion in part on the facts learned through such examination. This, we think, is a material distinction (*State v. Townsend,* 66 Iowa, 741), and makes the criticism contained in the instruction unwarranted and erroneous. We may add further, in relation to the *Hockett case,* which approves the clause in the instruction that we have italicized, because such language was used by this court in the opinion in *State v. Felter, supra,* that many things may be properly said in an opinion which, in the same form, could not be approved as part of a charge to a jury. Other questions are discussed by appellant. These are the only errors, however, which we find; but, because of them, a new trial is ordered and the judgment REVERSED.