STATE OF IOWA, Appellee, v. PHILIP BOGOSSIAN, Appellant.

**SEARCHES AND SEIZURES:** Evidence Unlawfully Obtained—Harmless Error. On a prosecution for larceny, the objection that the alleged stolen property was found, by means of an unlawful search, in the possession of the accused, becomes quite immaterial when the accused testifies without qualification that he did take and carry away said property.

**CRIMINAL LAW:** Instructions—Kleptomania. Instructions to the effect that one accused of larceny would be accountable therefor unless he was driven to do the act in question by an "insane *and* irresistible impulse" are not erroneous when the nature of the defense of kleptomania was explicitly and correctly stated to the jury.

**CRIMINAL LAW:** Reasonable Doubt—Lack of Evidence. An instruction which instructs that a reasonable doubt must be predicated upon all the facts and circumstances appearing in evidence necessarily implies a due consideration of what the evidence *fails to show.*

**CRIMINAL LAW:** Evidence—Kleptomaniac Impulse. On the plea that the accused is a kleptomaniac, evidence is inadmissible that the accused had, prior to the accusation in question, been arrested, and had made extensive admissions of past acts committed, as claimed, under the kleptomaniac impulse.

*Appeal from Scott District Court.*—A. P. BARKER, Judge.

NOVEMBER 11, 1924.

INDICTMENT for grand larceny. There was a judgment and verdict of guilty, and defendant has appealed.—*Affirmed.*

*F. C. Harrison,* for appellant.

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, *John Weir,* County Attorney, *Walter Newport,* and *J. J. McSwiggin,* for appellee.

EVANS, J.—I. The subject-matter of the larceny charged consisted of a brass bed, four chairs, one rug, and one vacuum cleaner, all of which were found in the possession of the defendant. The specific nature of the defense of not guilty, as made in this case, was that the defendant acted under the insane impulse of kleptomania, and that he was not morally responsible for the act committed by him. The specific character of this defense is somewhat overlooked in the grounds .of reversal urged before us. One of these grounds is that the State made an unlawful search of the defendant's premises and obtained possession of the stolen goods pursuant to such unlawful search, and that, for such reason, the evidence of the searching officials in relation to the finding of such goods was all improperly received, and that a verdict should have been directed for the defendant on that ground. Recognizing our holding in *State v. Tonn,* 195 Iowa 94, 96, and *State v. Rowley,* 197 Iowa 977, the appellant contends for a distinction in the case at bar. The evidence for the State was that the search of the defendant's premises was made with his express consent, after he had been informed of the purpose of the officers. This was the state of the record when the evidence now under attack was admitted in the court below. Later in the trial, the defendant qualifiedly denied such consent. The trial court met this situation by instructing the jury, in substance, that, unless the search was made with the consent of the defendant, it would be illegal, as made without a warrant, and that, in such event, the jury should return a verdict for the defendant. We shall have no occasion to pass upon the correctness of the court's instructions

1. SEARCHES AND SEIZURES: evidence unlawfully obtained: harmless error.

or of his ruling admitting the testimony, for the simple reason that, in the course of the trial, the defendant became a witness in his own behalf, and testified directly and unequivocally that he did take and carry away from the possession of the owner the specific goods charged in the indictment. This testimony on his part rendered the question of the method by which the State obtained its evidence quite immaterial and nonprejudicial. It narrowed the practical issue for the jury to the one question as to whether, in so taking the goods, the defendant acted rationally, or whether he acted under an irresistible insane impulse, for which he was not morally responsible. It was his evidence that, in the taking of the goods, he acted under such a compulsion.

In the examination of the record for errors, we shall, therefore, confine ourselves to this phase of the defense. On such phase, complaint is made that the court improperly instructed the jury, in the use of the following language:

"But if it appears from all of the facts and circumstances in evidence in the case that the defendant committed the acts charged in the indictment, and that he then rationally understood the nature and consequences of his said acts, and was not driven to them by an insane and irresistible impulse, then he cannot claim the protection of insanity, and is guilty of the crime charged in the indictment."

2. CRIMINAL LAW: instructions: kleptomania.

The point made is that, instead of using the phrase "an insane *and* irresistible impulse," the court should have said, "an insane *or* irresistible impulse."

In support of this point, appellant relies upon *State v. McCullough,* 114 Iowa 532; *State v. McGruder,* 125 Iowa 741, 749. The cited cases do not sustain the point. In the first cited case, the expression "insane and irresistible impulse" was sustained, though the case was reversed on other grounds. In the second of the cited cases, the form approved was "irresistible insane impulse." It was held that the showing of such was a sufficient defense, without proof of weakness or idiocy. When the language complained of is further considered in the light of

its context, it presents no ground of complaint. As a part of such context, the court instructed as follows:

"Kleptomania is a form of insanity. It is an irresistible desire to steal; a weakening of the will to such an extent as to leave the afflicted one powerless to control his impulse to appropriate the personal property of others. It is not easy to explain or to understand the nature, character, and degree of insanity which exonerates a person from responsibility for crime. Upon the one hand, it is not necessary to show that the accused is insane upon all subjects, or does not know right from wrong as to his acts in general, in order to thus exculpate him. * * * If the acts charged in the indictment were done by the defendant, but were caused by mental disease or unsoundness which dethroned his reason and judgment in respect to those acts, which destroyed his power rationally to comprehend the nature and consequences of his acts, and which, overpowering his will, inevitably forced him to their commission, then he is not, in law, guilty of the crime charged."

This ground of reversal is, therefore, not well taken.

II. Complaint is made of the definition given by the instructions, of the term "reasonable doubt," in that it failed to say that reasonable doubt may be predicated upon a *lack* of evidence. The instruction did say that reasonable doubt must be predicated upon all the facts and circumstances appearing in evidence. It did not, in terms, say that it could be predicated upon a lack of evidence. This ground of reversal was completely negatived by us in the recent case of *State v. Ritchie,* 196 Iowa 352, in which we said:

3. CRIMINAL LAW: reasonable doubt: lack of evidence.

(Weaver, J.) "Further exception is taken to the court's instruction upon the question of reasonable doubt, in that the jury was told, in substance, that a reasonable doubt is one which naturally and fairly arises in the mind from an impartial consideration of all the evidence. The criticism offered upon this statement is that a reasonable doubt may also arise from a *lack* of evidence, and that the jury should have been so told. It is true that this court has, on one or more occasions (see *State v. Smith,* 192 Iowa 218), expressed its disapproval of an instruc-

tion so framed; but we think it has never been held an error of a character which necessitates a reversal. Indeed, the distinction between the two forms of instruction is somewhat over-refined and shadowy. A reasonable doubt, arising from the case as made by the evidence, implies an inquiry into the effect of the entire showing in support of the indictment, both its strength and its weakness; or, in other words, what the evidence reveals and what it fails to reveal. A juror of average intelligence could not fail to so understand the charge.'' *State v. Ritchie,* 196 Iowa 352, 362.

III. The defendant offered to prove that he had pleaded guilty to a former indictment wherein he was charged with other larceny, and that he had, at that time, made extensive admissions of past acts committed, as claimed, under the kleptomaniac impulse; that the trial court adjudged a sentence of five years' imprisonment, and thereafter paroled the defendant. This evidence was rejected, upon objection of the State, and ground of reversal is laid upon such ruling. We see no error at this point. Such evidence might be very proper for the consideration of a board of parole. It did not tend to establish a defense. It was offered purely as direct substantive evidence on the part of the defendant, and not as explanation or rebuttal of any evidence introduced by the State. It was, therefore, properly rejected.

4. CRIMINAL LAW: evidence: kleptomaniac impulse.

We find in the record no ground of reversal. The judgment below is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., and STEVENS and FAVILLE, JJ., concur.