STATE OF IOWA, Appellee, v. JOE GARDINER, Appellant.

OCTOBER 25, 1927.

REHEARING DENIED JANUARY 13, 1928.

*Harry Wifvat,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *Blake Willis,* County Attorney, and *George J. Dugan,* for appellee.

STEVENS, J.—I. The indictment in this case charged the defendant with the crime of embezzlement, as township clerk, of funds belonging to Beaver Township, Dallas County, Iowa. A demurrer was interposed to the indictment, which was overruled, as was also a motion to quash an amendment to the indictment, filed after the ruling on the demurrer. The several grounds of the demurrer to which it is necessary to refer are (a) that the indictment is bad for duplicity; (b) that it is so indefinite and general in terms that it did not sufficiently apprise the defend-

ant of the nature of the crime and the facts constituting its commission to enable him to prepare a defense; (c) that it does not charge that a demand was made upon the defendant to account for the money or property coming into his custody as a public officer; and (d) that it does not designate or name the person authorized by law to make such demand. The indictment is based upon Section 13027, Code of 1924, and charges that:

"The said Joe Gardiner did then and there unlawfully, knowingly, fraudulently, and feloniously embezzle, without the assent of said township trustees or any person thereto authorized, of said public moneys belonging to said township the sum of four thousand three hundred sixty-six dollars and sixty-six cents ($4,366.66) of the value of four thousand three hundred sixty-six dollars and sixty-six cents ($4,366.66) the custody and care of which he, the said Joe Gardiner, was then and there, as aforesaid, intrusted with, and which he did then and there have and hold, by virtue of his office of clerk of Beaver Township, Dallas County, Iowa, and for which the said Joe Gardiner, as such officer and clerk as aforesaid, has failed and neglected to account, and that demand for the payment of said moneys has been made of the said Joe Gardiner by the township trustees through their chairman, Hans Meier, and by Gertrude Bryan-Friedrichsen and Fred Schnoor, his successors in office as clerk of said township, the person or persons entitled thereto, and that he has failed to account for or pay over to either of said officers or any proper officer any of said moneys or funds."

The above section enumerates various grounds upon which an indictment charging embezzlement of public funds by a public officer may be based. But one crime, however, that of embezzlement by a public officer, is created or defined. It may, under the statute, be committed in different ways, but the crime defined is, nevertheless, embezzlement. As already appears, the indictment charged that the funds which it is alleged were embezzled were intrusted to and came into the possession of the defendant by virtue of his office of township clerk. Any or all of the various grounds enumerated in the statute may, by the use of the disjunctive, be alleged in the indictment. The effect thereof is not to charge more than a single offense, but merely the various methods by which it may have been com-

mitted. The indictment in such case is not bad for duplicity. *State v. McKinney,* 130 Iowa 370; *State v. McDougal,* 193 Iowa 286; *State v. Browning,* 153 Iowa 37; *State v. McMahon* (Iowa), 211 N. W. 409 (not officially reported); *State v. Berg,* 200 Iowa 627.

The indictment in this case is not lacking in explicitness. It charges every essential and material element of the crime, designates the office, the amount embezzled, and also the failure to account, on demand, for the sum charged to have been embezzled. Nothing is lacking to enable the defendant to make full and adequate preparation for his defense. As stated, the indictment in specific terms charges that demand was made by the chairman of the board of township trustees and by the defendant's successors in office, naming them. The demurrer to the indictment was properly overruled.

II. The amendment to the indictment, which was filed by the county attorney after due application and permission of the court to do so, struck from the indictment all that part thereof commencing with and following the words "by the township trustees," and inserted in lieu of said stricken words the following: "By Gertrude Bryan-Friedrichsen, his successor in office as clerk of said township, the person entitled thereto, and that he has failed to account for or pay over to the said Gertrude Bryan-Friedrichsen, his successor in office, any of said moneys or funds." So that the indictment, as amended, alleged a demand by Gertrude Bryan-Friedrichsen, defendant's immediate successor in office, only. The effect of the amendment was simply to eliminate surplusage. But it is claimed that the amendment charges a different crime from that alleged in the original indictment. This contention is without merit.

What is now Section 13029, Code of 1927, was originally enacted as Chapter 67, Laws of the Twenty-sixth General Assembly, and made a part of Section 3908, Code of 1873. The latter section, as amended, became Section 4840, Code of 1897. It so remained until the revision of 1924, when it was printed as an independent section. This, however, neither altered nor changed the effect of the statute, nor did it create a separate and distinct crime.

It remained as it had always been,—a ground upon which an indictment charging embezzlement by a public officer might be based. The distinction pointed out in *State v. Hoffman*, 134 Iowa 587, is not material in this case.

Prior to the enactment of Chapter 243, Laws of the Forty-second General Assembly, permitting amendments in matters of substance, indictments could be amended only in matters of form, in the name of a person, as to the ownership of property, or the description of any person or thing. Section 13744, Code of 1924. It was necessary that the indictment allege that a demand was made by the person entitled to receive the funds, naming him, but it was not essential that repeated demands be alleged or proven. Both the indictment and the amendment alleged that demand was made by Gertrude Bryan-Friedrichsen, defendant's immediate successor in office. This was sufficient, and the allegation of demand by the township trustees was mere surplusage, and its elimination by an amendment to the indictment could have worked no possible prejudice to the defendant.

III. Some difficulty was encountered by counsel in making Mrs. Friedrichsen understand the difference between mere conclusions and the recital of the facts, while being examined as to what she did by way of making demand upon the defendant to account for the funds in question. It is also contended by defendant that the demand claimed to have been made by Mrs. Friedrichsen was after she had resigned from the office of township clerk. There may have been some uncertainty in the testimony on this point, but the question was properly left to the jury to decide.

IV. Defendant, prior to his resignation in April, 1925, had been township clerk of Beaver Township for many years. During the latter part of his term in office, he was cashier of the Farmers Trust & Savings Bank of Bouton, in which the funds of his office were kept, and one William S. Arthur was president. The defendant testified that he and Arthur purchased an implement store, and that he gave his personal check to the investment brokers through whom the purchase was made, for $5,000; that later, Arthur charged $3,000 of the amount represented by the check to the defendant's account, as township clerk; that, when he learned of the action of Arthur, he demanded and sought to compel the repayment of $2,500 of the amount thus

withdrawn by Arthur. The defendant also testified that he offered to pay the balance, over and above the $2,500, to his successor in office, in full settlement of the shortage. The offer was declined. Arthur was permitted to testify in rebuttal that he had no interest whatever in the purchase of the implement store, that he invested nothing therein, and that he withdrew nothing from the defendant's account as clerk in payment of the check drawn by him, and that he did not charge the same to the said account. The purpose, of course, of this testimony was to show that the defendant was at all times ready and willing to account for and pay over to his successor the amount actually received by him. If he had tendered the full amount of the shortage, he could not have been prosecuted on a charge of embezzlement. *State v. Berg,* supra. The jury must have found that the defendant failed to account and pay over to his successor any part of the shortage charged. The instructions of the court fully protected the rights of the defendant. On the question of the effect to be given the alleged wrongful acts of Arthur they were explicit, and wholly favorable to the defendant.

V. The defendant objected to the introduction of the testimony of Arthur as rebuttal. Perhaps some of it was not strictly rebuttal, but it was not prejudicial because of  that fact. *State v. Graham,* 203 Iowa 532; *State v. Williams,* 195 Iowa 785; *State v. Wilson,* 157 Iowa 698.

VI. The court instructed the jury that, if the State had shown beyond a reasonable doubt that there was a shortage in the accounts of the defendant as township clerk, and that $2,500 thereof was caused by the abstraction of Arthur, without his consent, the burden was on him to show that fact. The court did not, in this instruction, however, include the usual words "by the preponderance of the testimony." The term "burden" could not well have been misinterpreted by the jury. Manifestly, proof by a preponderance of the evidence would have met the burden which the instruction imposed upon the defendant. Proof beyond a reasonable doubt was not required. We are not inclined to hold that the jury might have been misled by the term "beyond a reasonable doubt," appearing in other instructions defining the burden resting upon the State.

VII. The court gave the usual definition of a reasonable doubt, but did not in terms instruct the jury that it might arise from the want of evidence. We have repeatedly refused to reverse because of this omission. The instruction contained the phrase "arising from the consideration of the whole case." This we have held to be sufficient. *State v. Ritchie,* 196 Iowa 352; *State v. Boyd,* 199 Iowa 1206; *State v. Bogossian,* 198 Iowa 972.

VIII. It is claimed that the demand made upon the defendant by his successor in office was in writing, and that it was delivered to him. The State caused a written notice to be served upon the defendant to produce the writing. As a part of the foundation for the introduction of secondary evidence of the contents of the instrument, the State offered the notice, which bore acceptance of service by the defendant's attorney. The objections of the defendant to the introduction of this notice were overruled, and it, with other exhibits, was sent to the jury room when the jury retired for deliberation. The notice was properly admitted by the court, as demand upon the defendant to produce the original for the purpose of laying the foundation for the admission of secondary evidence. Of course, the defendant could not be required to produce evidence against himself. It was optional with him whether he would produce the instrument or not, but the service of notice gave him an opportunity to do so, if he desired. *State v. Tucker,* 234 Mo. 554 (137 S. W. 870); 3 Greenleaf on Evidence (16th Ed.) 115, Section 107. The exhibit should not have gone to the jury. It was for the consideration of the court, in determining whether the proper foundation had been laid for the introduction of secondary evidence. The jury had nothing to do with the notice. The defendant, however, took the stand in his own behalf, and denied that a written demand was made upon him by Gertrude Bryan-Friedrichsen while she was township clerk. He also gave his version of the entire transaction, and we cannot perceive how the defendant was prejudiced by the presence of the notice in the jury room. What use, if any, was made of it by counsel for the State in argument is not disclosed. The record does, however, show that it was read when offered in evidence. The better practice would have been to merely pass it to the court for examination.

IX.   There is some discrepancy in Instructions 6 and 7 as to the time within which demand was required and the date on which it was made.   The discrepancy, construed in connection with Paragraph 8 of the instructions, which told the jury that the evidence of demand was confined to April 26, 1925, was not unfavorable to the defendant.

We have examined the record with care, and given mature consideration to the exceptions preserved in the court below. There is some conflict in the evidence, but every material question of fact was submitted to the jury by appropriate instructions.   No reversible error appearing.in the record, the judgment of the court below is affirmed.—*Affirmed.*

EVANS, C., J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.