STATE OF IOWA, Appellee, v. C. W. HUFF, Appellant.

No. 41545.

OCTOBER 24, 1933.

Welch & Virtue, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and William M. Tatum, County Attorney, for appellee.

EVANS, J.—The defendant was prosecuted under the following indictment:

"The Grand Jurors of the County of Harrison in the name and by the authority of the State of Iowa accuse C. W. Huff of the crime of embezzlement and charge that the said C. W. Huff while county treasurer of Harrison County, Iowa, did then and there embezzle and convert to his own use $4,251.80, then and there money that came into his hands during the year 1929 and 1930 by virtue of his office as county treasurer of Harrison County, Iowa, which said sum the said C. W. Huff as county treasurer failed to account for, in the county and state aforesaid."

It will be noted that the indictment does not plead separate items as constituting the sum total of the embezzlement. The evidence on the first trial, however, disclosed that this sum total was made up of a series comprising eleven transactions. The first trans-

action involved an item of $800 as of January 8, 1930, and a second item of $620.62 as of July 7, 1930. Nine other transactions were shown, any one of which, if deemed proven, would support the indictment. At the close of the evidence on the first trial the defendant moved that the state be required to elect upon which transaction the state would ask a conviction. This motion was sustained. The state conformed to the ruling and elected to claim a conviction upon the item of $620.62 of July 7, 1930. The reason for the foregoing ruling is not made apparent in the record and is not material here. The verdict of the jury found the defendant guilty of embezzlement in the transaction thus specified by the state. Later, upon defendant's motion in arrest of judgment, the court awarded him a new trial. Pursuant to such ruling a new trial was had wherein the defendant was again found guilty by the verdict of the jury and judgment was entered accordingly. It is from this judgment that the appeal is prosecuted. On this latter trial the defendant pressed the point that the first trial had operated as a jeopardy, and that the state had no further right of prosecution. This point was predicated upon a particular feature of the record on the second trial. On such trial the defendant asked the court to withdraw from the jury the consideration of all other transactions than that of July 7, 1930, involving $620.62. The court refused this request. It permitted evidence to be introduced in support of eleven transactions. The jury rendered a verdict of guilty of embezzlement in the amount of $800. For the purpose of supplementing this verdict the defendant filed the affidavits of certain jurors to the effect that the verdict of guilty was predicated upon the first item of $800 under date of January 8, 1930. The defendant thereupon moved in arrest of judgment on the ground that he could not have been found guilty upon any item save that of July 7, 1930, for $620.62, and that as to all the other items he had been in jeopardy on the first trial, and that the same had been dismissed. Whether the affidavits of these jurors could be considered at all for the purpose indicated is a question which we need not now consider. The contention for the defendant is that he had been acquitted of the charge so far as this transaction was concerned upon the first trial, in that such was the necessary legal effect of the election by the state upon the first trial and of the withdrawal of such transaction from the jury on such first trial. Such is the principal contention now presented for our consideration.

Section 12 of article I of our Constitution provides:

"No person shall after acquittal, be tried for the same offence."

Our Code sections 13807, 13808, and 13809, are as follows:

"13807. A conviction or acquittal by a judgment upon a verdict shall bar another prosecution for the same offense, notwithstanding a defect in form or substance in the indictment on which the conviction or acquittal took place.

"13808. When a defendant has been convicted or acquitted upon an indictment for an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment for the offense charged in the former or for any lower degree of that offense, or for an offense necessarily included therein.

"13809. Except where otherwise provided, the judgment for a defendant on a demurrer, or on an objection to its form or substance taken on the trial, or for variance between the indictment and the proof, shall not bar another prosecution for the same offense, if a resubmission has been ordered."

The first trial of the defendant involved no entry of judgment. That was rendered impossible by the very granting of defendant's motion for a new trial. There was but one count to the indictment. The indictment did not purport to state the same offense in different forms; nor did it present any alternative methods in the perpetration of the offense whereby one alternative would negative the other. The eleven transactions disclosed in the evidence present no inconsistency with each other. Each of them, if proven, supported the charge. As authority for his contention, the defendant relies upon one precedent: Schultz v. State, 135 Wis. 644, 114 N. W. 505, 116 N. W. 259. In the cited case the defendant was charged with two separate offenses, both being contained in the same information. The first charged him with threatening a criminal accusation against another and the second charged him with threatening to do personal injury to the same person. The trial court held at the close of the evidence that there was no support therein for the second charge, and on that ground withdrew the same from the jury, and submitted the first charge to the jury. The jury rendered a verdict of guilty. On appeal, the Supreme Court found that the first charge thus submitted by the trial court to the jury had no support in the evidence. It further held that

the second charge did have such support. It thereupon remanded the case for trial upon the second charge. On rehearing it receded from this order of remand and held in effect that the second charge was not before it, in that the trial court, even though erroneously, had disposed of it by refusing to submit it to the jury. The court therefore ordered the discharge of the prisoner. It will be seen that the case is rather an extraordinary one in its facts. The information might well have been defeated on the ground that it charged two independent crimes. The only ground considered, however, was as here indicated. The decision was by a divided court, and a very cogent dissenting opinion was presented. The case is by no means parallel with the case at bar. We have no occasion, therefore, either to follow it or to take issue with it. The opinion in the case is not easily analyzed. In Montgomery v. State, 136 Wis. 119, 116 N. W. 876, 18 L. R. A. (N. S.) 339, the same court took occasion to distinguish its then opinion from its opinion in the Schultz case. In the Montgomery case the defendant was charged with murder in the first degree. On the first trial the trial court withdrew from the consideration of the jury all the included offenses, and charged the jury that the defendant could be found guilty, if at all, only of first-degree murder. The jury rendered a verdict of guilty upon which judgment was entered. On appeal to the Supreme Court (128 Wis. 183, 107 N. W. 14) it was held that the verdict of guilty of murder in the first degree was not sustained by the evidence and the case was remanded for a new trial. Upon a second trial, in the trial court, the jury rendered a verdict of guilty of manslaughter. The defendant contended that he had been acquitted as to the included offense upon the first trial, and that he could not be put in jeopardy again. From an adverse ruling of the trial court he appealed again to the Supreme Court. Our citation refers to this second appeal. On this appeal the Wisconsin court quotes from its former decisions as follows:

"When a verdict of guilty in a criminal case is set aside, all the proceedings on the trial are necessarily set aside and vacated with the verdict. So when the verdict is set aside on motion of the accused, and he afterwards alleges that the trial and verdict put him in jeopardy of punishment, it may well be replied that the portions of the record by which alone the jeopardy can be proved have been set aside and vacated at his request, and that he has thereby deprived

himself of the means of proving his allegation of jeopardy." State v. Parish, 43 Wis. 395.

Quoting further from the same court:

"The defendant was convicted on the first trial of murder in the first degree. When he prosecuted his writ of error from the judgment upon that conviction and obtained a reversal and a new trial, the case went back for a retrial on the charge of murder in the first degree, which included all homicides of a lesser degree just as it did upon his first trial. He had by his own act in applying for a new trial waived his constitutional protection against a second trial for murder in the first degree, and necessarily waived his right to object to a new trial for any of the lesser degrees included within the charge of murder in the first degree as to which charge he had thus consented that he might be again put in jeopardy. This is not a case where two separate crimes, neither of which is included within the other, are charged in the same information, as was the case of Schultz v. State, 135 Wis. 644, 114 N. W. 506, 116 N. W. 259, 571. In that case the court by instructions took from the jury the consideration of one of the separate offenses charged and a verdict of guilty was rendered, which, under the instructions, this court held must be construed as meaning guilty of the other offense only. A writ of error was prosecuted by the defendant, and it was held to be addressed only to the offense of which he was convicted, and not to the one of which he was not convicted, and hence that he had not waived his defense of former jeopardy as to the last-named defense. The distinction between that situation and the present seems to me so manifest as not to call for further elucidation. So it seems to me clear that upon the second trial the defendant might rightly be convicted of any degree of homicide which the evidence sufficiently proved." Montgomery v. State, 136 Wis. 119, 116 N. W. 876, 18 L. R. A. (N. S.) 339.

It will be noted that the very distinction, which that court makes between the Montgomery case and the Schultz case, is quite applicable as a distinction between the case at bar and the Schultz case.

Some reliance is placed upon the case of State v. Severson, 79 Iowa 750, 45 N. W. 305. In that case defendant was tried on information in a justice court. Four charges in four counts were alleged in the information. The defendant was found guilty on one

count only in the justice court. An appeal was taken to the district court where trial was had. This trial resulted in his acquittal on the charge sustained by the justice court. The district court held in effect that the counts upon which defendant had been acquitted in the justice court were not involved in the appeal, and we sustained the contention here. In that case there was a *judgment* entered in the justice court, and this conformed to the requirements of our statute, section 13807.

In State v. Bowman, 94 Iowa 228, 62 N. W. 759, the defendant was convicted of uttering a forged instrument. He obtained a new trial by motion. Upon the second trial he pleaded that he had been put in jeopardy by his first trial. We said:

"But the defendant was not acquitted at the first trial. The motion which the court sustained, although nominally in arrest of judgment, was in fact based upon a statutory ground for a new trial—that is, that the verdict was contrary to the evidence; and the court gave to the motion the effect of a motion for a new trial, and in sustaining it the verdict was set aside."

In State v. Clark, 69 Iowa 196, 28 N. W. 537, a similar state of facts was involved. In State v. Knouse, 33 Iowa 365, the defendant obtained a new trial after conviction of murder in the second degree. Upon his second trial he was convicted of manslaughter. On the second trial he pleaded a former jeopardy. The plea was not sustained here. The general rule in such a case is stated in 16 C. J. 263 as follows:

"A defendant waives his right to plead former jeopardy by applying for a new trial. When therefore a new trial is granted in the appellate court, and he is reindicted, or is tried on the original indictment, he cannot plead, as a bar to the prosecution, the conviction which was reversed on the appeal. This is true, although on the new trial he is convicted of a different offense carrying an increased sentence."

In Trono v. U. S., 199 U. S. 521, 26 S. Ct. 121, 50 L. Ed. 292, 4 Ann. Cas. 773, the rule is stated as follows:

"When, at his own request, he has obtained a new trial, he must take the burden with the benefit, and go back for a new trial of the whole case."

It will be noted that the indictment is couched in the general terms of the statute and specifies no particular date for any particular amount. The defendant was entitled to a bill of particulars, but he did not move for it. As already indicated, the evidence disclosed eleven different transactions on nine different dates, which tended to show a sum total of default of approximately $3,300. At the first trial the trial court took the view that each one of these transactions appearing in the evidence constituted separate and distinct offenses, and that conviction could be had for only one of them. Evidence of the other transactions was received only as bearing on the question of intent of the defendant. It was on this theory that the court required the state to elect. Pursuant to such theory it also charged the jury that they could not consider the evidence of the other transactions except as bearing upon the fraudulent intent of the defendant. The state having elected to rely upon the item of $620.62, the verdict of the jury found the defendant guilty of embezzlement to the amount of $620.62.

The defendant now argues that by these instructions the trial court on the first trial dismissed the *other charges* of the indictment. This is an erroneous view. There were no *other charges* in the indictment. The other "transactions" were made to appear as items of evidence only. As such they were strictly confined by the court to the purpose of proving fraudulent intent. It cannot be said, therefore, that there was any dismissal by the court of any count or charge in the indictment. And this is so even though it might be said that, if the defendant had suffered judgment upon the verdict of the jury, such judgment might have operated as a bar to any further prosecution involving the period of time covered by the indictment. As to this hypothesis we need express no view. The second trial was conducted by another judge. This judge appears to have held the view that section 13032 of the present Code was applicable to the case, and that the series of transactions disclosed by the evidence should be construed under section 13032 as *one* act and therefore *one* embezzlement. The case was submitted at the second trial on that theory. In this respect one or the other of the two judges entertained the wrong view. But this is not the point argued by the appellant. His point is that he was put in jeopardy at the first trial for the reasons already stated. We are holding that he was not. This holding is not affected by the question whether the second judge was wrong in interpreting section 13032. The complaint is not that

the second judge erroneously submitted a multiplicity of charges under a single count, but that he erroneously disregarded the defendant's plea of former jeopardy. Whether section 13032 should be deemed as applying to an indictment under section 13027 has no particular bearing upon the question whether the defendant was put in jeopardy upon the first trial as to transactions, which were not charged in the indictment and which were not submitted to the jury.

We hold only that the proceedings on the first trial of the defendant did not result in an adjudication, which is now available to him as a plea of former jeopardy. This meets the one contention upon which the appellant rests his appeal.—Affirmed.

KINDIG, MITCHELL, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.

STEVENS, J. (specially concurring)—The indictment in this case charges the defendant, a former county treasurer, with the crime of embezzlement. Embezzlement by a public officer is defined in sections 13027 and 13029 of the Code of 1931. The crime may be committed by failing or refusing to keep public money coming into the hands of such officer in a place of custody or deposit provided by law, and by keeping deposits of such money or property in some other place than that provided by law, and by the unlawful conversion to his own use by way of investment in any kind of property or in loans without authority of law, and by converting to his own use any such funds as may come into his hands as such officer, and by failing to account, on demand of the proper authority, for such funds as may come into his possession by virtue of his office.

Section 13029 was enacted as chapter 67 of the laws of the Twenty-sixth General Assembly and as a part of section 4840 of the Code of 1897, or as now editorially classified as section 13027. Its purpose and effect was to create a distinct form of the crime of embezzlement, but not a new crime. State v. Hoffman, 134 Iowa 587, 112 N. W. 103; State v. McKinney, 130 Iowa 370, 106 N. W. 931; State v. Gardiner, 205 Iowa 30, 215 N. W. 758; State v. Berg, 200 Iowa 628, 204 N. W. 441.

It will be observed that subdivisions 1 and 2 of section 13027 are distinct in character from each of the remaining forms or grounds of the offense. These subdivisions do not necessarily contemplate the actual misappropriation or conversion of funds. They

have a distinct purpose. The obvious design of the legislature has at all times been to prevent the unlawful waste of public funds coming into the possession of the legal and proper custodians thereof.

Neither of the sections as at present editorially classified, nor the respective subdivisions, defines a distinct and independent crime. The crime defined by each and all of them is embezzlement. The statute simply designates the various forms or means by which the crime of embezzlement may be committed. Public officers such as are designated in the statute frequently, and the county treasurer almost daily, receive public funds into their offices. The legislature has not contemplated that each separate and independent defalcation must be prosecuted as a distinct and independent crime. Defalcations of public officers frequently, and indeed usually, result from the unlawful appropriation of divers items from fifty cents to much larger sums. A clerk of the district court might, in the course of a two-year term, appropriate in the aggregate hundreds of dollars and yet each single misappropriation not exceed fifty cents or one dollar. He may be charged in the indictment with having committed the crime in any of the forms designated by the statute and without specifying each separate item. The form chosen cannot operate as a limitation upon the right of the state to offer proof of the several distinct misappropriations. This is emphasized by the punishment provided which, in part, is a fine equal to the amount embezzled or the value of the property considered. The indictment in this case is obviously bottomed upon section 13029. This is true, notwithstanding the use of the word "conversion" therein. So far as this point is concerned, the indictment would have been good without the use of this term. It may be conceded that the indictment is defective, but no question involving its sufficiency or validity is now before the court. The state had the absolute right to introduce testimony of each and every separate and distinct item which it claimed had been unlawfully converted. County treasurers are elected for a term of two years. But one prosecution is necessary to cover all of the defalcations during such term. The sum charged in the indictment represents the aggregate amount of the various items of the public funds misappropriated by defendant. The court could not properly require the state to elect to stand upon any particular item. The offense under the present indictment was the misappropriation of public funds and the failure to account therefor on demand. It seems to me that it would be little short of an ab-

surdity for the court to hold that a separate and distinct prosecution must be had of each and every separate and distinct item appropriated. Surely, the legislature had nothing of this sort in contemplation.

The result of the foregoing interpretation of the statute renders the plea of former jeopardy wholly without foundation or merit. The indictment charges but a single offense, and that is the crime of embezzlement committed by the unlawful diversion or misappropriation of $4,251.80 of the public funds during his term of office for which he failed to account on demand.

ALBERT, C. J. (dissenting)—On the 23d day of September, 1931, the grand jury of Harrison county returned the following indictment against the defendant:

"The Grand Jurors of the County of Harrison in the name and by the authority of the State of Iowa accuse C. W. Huff of the crime of embezzlement and charge that the said C. W. Huff while county treasurer of Harrison County, Iowa, did then and there embezzle and convert to his own use $4,251.80, then and there money that came into his hands during the year 1929 and 1930 by virtue of his office as county treasurer of Harrison County, Iowa, which said sum the said C. W. Huff as county treasurer failed to account for, in the county and state aforesaid."

On January 18, 1932, defendant having entered a plea of not guilty, a jury was drawn and sworn, and the trial of the case began. At the close of the state's testimony, defendant moved the court to require the state to elect on which particular embezzlement it would proceed. This motion was sustained, and the state thereupon elected to stand on a transaction of July 7, 1930, with the First National Bank of Woodbine involving an amount of $620.62. The case was submitted to the jury as to this item, and the jury returned a verdict of guilty. On further procedure in the case, a motion for a new trial was sustained, and, when the case was again called for trial, defendant pleaded a former adjudication as to all items involved, except the aforesaid item of $620.62. As the second trial proceeded, the defendant offered to introduce the necessary evidence to support his plea of former adjudication, and, over objection of the state, the court ruled that no such evidence was admissible; thereby refusing the defendant the right to introduce the necessary evidence to

support his plea of former adjudication. This ruling is one of the errors assigned.

On the refusal of the court to permit the defendant to introduce his evidence supporting the plea of former acquittal, the defendant requested the court to withdraw from the consideration of the jury all of the transactions shown in evidence by which it was claimed said funds were embezzled by the defendant, other than the transaction of July 7, 1930, being the amount of $620.62 on which the first jury had convicted him. The court refused so to do.

To a full understanding of the questions involved, the fact situation, as shown by the record, is as follows:

Fifteen different transactions on various dates between January 8 and December 31, 1930, were introduced in evidence. The first alleged embezzlement occurred January 8, 1930, and is known in the record as "the transaction with the First National Bank of Logan for $800"; the next transaction occurred on July 7, 1930, for $620.62, known as the "transaction with the First National Bank of Woodbine"; the other various transactions occurred respectively on August 12, 1930, two transactions on August 28, 1930, one on November 17, 1930, one on December 16, 1930, and two on December 31, 1930. Four other additional items were referred to in the evidence, but later withdrawn by the state, amounting to $905.35. Evidence of each and all of these different transactions was introduced on the part of the state at the first trial, and, as above explained, on motion to elect, the state elected to proceed on the item of July 7, 1930, of $620.62, and withdrew all other items from the jury, and limited the jury to the one item above indicated.

On the second trial, the defendant, by proper proceedings, requested that the court submit the case only as to the one item or transaction of July 7, 1930. The court overruled this request and submitted the case to the jury on all items except the four, which, in the first trial, were withdrawn from the jury by the state, and the last jury found the defendant guilty as above stated, on the one item of $800, being the item of January 8, 1930. This item was an item which, under the election of the state in the first trial, was not submitted to the first jury. The defendant made the proper and timely offer of the various lines of testimony which, as a legal proposition, would support his plea of a former adjudication, providing such plea were available to him. As already indicated, the indictment herein charges a lump sum embezzlement. The evidence, however,

as above indicated, tends to show various completed embezzlements on various different dates.

In the case of State v. Berg, 200 Iowa 628, 204 N. W. 441, we had a similar indictment in which the charge alleged was against the bailiff of the municipal court for an alleged embezzlement of $500.86. The evidence in that case, which was similar to the record in this case, showed various different items of embezzlement on various different dates. We there said:

"But where the only proof of a failure to account is to be found in the failure to pay over each month fees collected during the preceding month, such failure to account would relate only to the fees collected during such preceding month which were not paid over; and such conversion of and failure to account for, the fees of each month would constitute a separate offense; and an election by the state would properly have been required. The failure to account each month was only a failure to do the thing then required, which was to pay over the fees collected during the preceding month. The indictment alleged that money collected by a series of acts was embezzled."

In other words, the rule, as I conceive it to be and as outlined in the Berg case, supra, is that, where the embezzlement is charged in the indictment in a lump sum and the evidence shows individual transactions upon any one or all of which the defendant might be convicted, he stands in the position of having as many charges covered by the indictment as shown by the different transactions. In other words, this defendant, after having a jury drawn and sworn and evidence taken showing fourteen different separate transactions, —on any one of which he could have been found guilty,—was, therefore, in jeopardy on each and all of such transactions. The court, by its withdrawal of the thirteen transactions from the jury, limited the jury in its decision to the one transaction, and the question is whether or not, as to the thirteen transactions withdrawn, the defendant had been so in jeopardy as to entitle him to rely upon his plea of former acquittal.

In the case of State v. Severson, 79 Iowa, 750, 45 N. W. 305, the defendant was informed against in the justice court, the information containing four counts charging separate offenses. On the trial in the district court the justice entered a judgment finding the defendant guilty on one count only, and named the count "count

1". The case was appealed, and, on the trial in the district court, the defendant was put on trial as to all of the counts. This court held that the legal inference to be drawn from the finding and judgment of the justice court was that, while he was guilty on count 1, he was not guilty on counts 2, 3, and 4. We there said:

"As a legal inference the defendant stood acquitted before the justice of the information except count 1. In the district court he was acquitted of count 1, and hence he stands acquitted of the entire information."

In 16 C. J. 260, section 434, it is said that, where the accused has been found guilty on one of the several counts, and the verdict is silent as to the others, and he obtains a new trial, he can be prosecuted only for the crime of which he was found guilty, and may plead a former acquittal as to the other counts. The note cited under this text shows this is quite the universal rule.

This rule may be criticized as not applying to the situation we have before us, because, in the present indictment, there was but one count. However, we conceive that the situation would be no different in the present indictment than it would have been had there been fifteen different counts in the same indictment.

On a careful search of the authorities I have been able to find but one case where this identical situation arose, that is, the case of Schultz v. State, 135 Wis 644, 114 N. W. 505. In the original submission of that case the court disposed of the matter in a cursory way, saying:

"The indictment contains but one count, though several violations of the statute are alleged in the conjunctive; hence the motion to compel the state to elect was properly denied."

Later this case was before the Wisconsin court on rehearing, and this question is elaborately discussed and the authorities collated. See 135 Wis. 653, 116 N. W. 259. The court there said:

"There can be no doubt but that the defendant was in jeopardy when he was put upon his trial upon a valid information, before a jury duly impaneled and charged with his deliverance. [Citing cases.] The question before us, however, is, 'Has the accused been put in jeopardy as to the first charge so as to preclude a new trial as to it?' In other words, has defendant by his motion for a new

trial waived the jeopardy and opened the case for a trial on the first charge? The motion for a new trial was clearly one upon the charge of which defendant was convicted, not upon the one upon which he was acquitted. [Citing cases.] Cases may be found holding that where the same offense is set up in different counts, as for example where one count charged defendant with killing deceased with a gun, and another count charged the killing with a pistol, and there was a conviction upon one count only, a new trial opened the case upon both counts. Brown v. United States, 2 Ind. T. 582, 52 S. W. 56. And when the different counts are simply formal variations in stating the same offense, then the granting of a new trial opens the whole case, and the defendant may be put upon his trial and convicted on any of the counts. [Citing cases.] But the rule of such cases is not applicable to the case before us, because here we have two separate and distinct offenses charged in the information. The one a threat to charge with the commission of a crime or offense, and the other a threat to do an injury to the person, property, business or calling of another, coupled with an unlawful intent in each case. * * * We conclude that the third question must be answered in the affirmative, and therefore the prisoner should be discharged."

In the Schultz case, the defendant was charged under the indictment with two crimes in one count, and he moved that the state be required to elect upon which part of the indictment it would prosecute. The motion was overruled. The court, however, by its instructions, removed from the consideration of the jury the first charge, and the verdict was returned against the defendant on the second charge in the indictment.

In the case at bar, the action of the prosecuting attorney, in response to the ruling of the court in electing to stand on the item of July 7th, amounted to a discontinuance of all charges against him, except the one selected by the state. Up until that time the defendant was in jeopardy as to all of the charges because the state had the right to elect to prosecute on any one of said charges, and the defendant would not know which one was to be sent to the jury until the election was made by the state. On the other hand, the refusal of the court to submit the thirteen charges to the jury, and instructing accordingly, amounted to a direction by the court to acquit on those thirteen charges, and, regardless of how erroneous

the ruling of the court may have been, it would bar a subsequent prosecution on the same charges. See 16 C. J. 256, section 415 and note.

The state contends that, as there was no judgment entered as to these thirteen items, it does not amount to an acquiescence. It is to be said that section 12, article I, of the Constitution, reads as follows:

"No person shall after acquittal, be tried for the same offence. All persons shall, before conviction, be bailable, by sufficient sureties, except for capital offences where the proof is evident, or the presumption great."

Under this section, all that is necessary to make a former adjudication is the acquittal, however it may come about, and the failure of the clerk to enter judgment on the verdict of the acquittal does not affect its validity as a bar to subsequent prosecution. Ball v. U. S., 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300; Wright v. Fansler, 90 Ind. 492; State v. Norvell, 2 Yerg. (10 Tenn.) 24, 24 Am. Dec. 458.

Dispute arose between counsel as to the section of the statute under which this indictment was drawn. As I read the same, section 13027 (Code 1931) is the section under which this indictment falls, and section 13029 has no application to the case before us. Section 13032, covering money converted by series of acts, was formerly a part of section 13031 covering embezzlement by agents, and has no application to the indictment under section 13027, and we so held in the Berg case, supra.

It is my conclusion that the court should have permitted the defendant to introduce his testimony in support of his plea of a former adjudication, and, if the same were sustained, it could only have been sent to the jury on the question of his guilt as to the item of July 7, 1930, of $620.62. As the case was tried, this item went to the jury, together with all the other items in the case, and the jury found the defendant guilty on an $800 item only which was separate and distinct from the item of July 7, and thereby, under the rules heretofore laid down, he was acquitted of the item of July 7.

The only thing left in the case, therefore, is whether or not the evidence offered by the defendant to support his plea of a former adjudication was sufficient to sustain the same. I think the evidence

offered does sustain the plea, and, having reached this conclusion, there is nothing left in the case to be tried.

I would reverse and remand.

CLAUSSEN, J., joins in this dissent.