## THE STATE OF IOWA V. JOHN GEIER, Appellant.

**Insanity:** JURY QUESTION. Where, on a prosecution for murder, the defense was insanity, the question of accused's insanity was for the jury.

**Qualification of Jurors:** That a juror, on a prosecution for murder, where the defense was insanity, had heard the details of the crime, and had the scene of the same pointed out to him, would not disqualify him, where it did not appear that he had heard anything as to the sanity or insanity of the accused, or expressed any opinion as to his guilt or innocence.

*Appeal from Keokuk District Court.*—HON. BENJ. McCOY, Judge.

TUESDAY, OCTOBER 2, 1900.

THE defendant was indicted for murder in the first degree, and on trial was convicted of murder in the second

degree, and sentenced to imprisonment in the penitentiary for the term of fifteen years. From this judgment the defendant appeals.—*Affirmed.*

*D. W. Hamilton* and *C. H. Mackey* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

GIVEN, J.—I. The evidence shows without conflict that on the evening of August 12, 1898, the defendant shot and killed Mathias Morhain. The claims of the appellant are that W. D. Adams, who sat as one of the jurors, was disqualified; that the defendant was not mentally responsible for the act at the time he did the shooting; and that the court erred in refusing an instruction asked by the defendant, to the effect that under the evidence the defendant could not be convicted of murder in the first degree.

II. The juror Adams, on examination as to his qualifications to sit as a juror, testified to the effect that he did not know the defendant; had never seen him until at the trial; that he had not talked with any person regarding the facts of the case; that he had not heard the particulars of the case; and had not formed or expressed an opinion as to the guilt or innocence of the defendant. The defendant, acting upon these statements, waived challenge of this juror peremptorily or for cause. In support of defendant's motion for a new trial, Sheriff Laffer and City Marshal Grimes made affidavit to the effect that on the night of August 12, 1898, they arrested the defendant at Talleyrand, where the shooting occurred, and that after placing him in jail they met W. D. Adams and E. G. Sampson, and stated to them "the facts and circumstances connected with the shooting as we had learned them at Talleyrand and from the defendant on the way from Talleyrand, and we at the same time stated that the killing was a cold-blooded murder." Mr. Sampson made affidavit to the same

effect, and A. D. Long testified to a statement by Adams that the officers had told him about the facts and circumstances of the case. H. H. Richardson testified that, when at Talleyrand in company with Adams before the trial, a party pointed out to them the place where the shooting occurred, the location of the parties, where the man who was killed had fallen, where the defendant lived, "and giving us a detailed statement of the transactions surrounding the shooting." Mr. Adams made affidavit, in effect, denying these statements of the witnesses, and reiterating his first statements as made at the impaneling of the jury. The oral examination of these persons shows it possible that Adams may not have heard the statements said to have been made, and that the place was pointed out from a distance. The only defense in the case is that the defendant was not mentally capable of judging of his acts at the time he did the shooting, and it will be observed that nothing was said and no opinion was expressed by any of these persons on that subject. Their statements were entirely as to facts that are undisputed. If it were otherwise, still it will be noticed that Adams expressed no opinion. The fact that Adams heard these statements did not disqualify him from sitting as a juror. *State v. Munchrath,* 78 Iowa, 286; *State v. Brady,* 100 Iowa, 194. There was no error in overruling the defendant's motion for a new trial on the ground that the juror Adams was disqualified.

III. The question as to the defendant's mental condition at the time he did the shooting was for the jury to determine. It was submitted under proper instructions, and the jury was fully warranted in finding that he was legally responsible for his act in shooting the deceased.

IV. As to the instruction asked by the defendant and refused, we think there was no error in refusing it. There is much in the circumstances of the case as shown by the evidence to support the claim of murder in the first degree,

and it was clearly the duty of the court, under the indictment and evidence, to submit that issue to the jury. We do not find any error in the record, and the judgment is therefore AFFIRMED.

GRANGER, C. J., not sitting.