STATE OF IOWA, Appellee, v. ALBERT GRIMM, Appellant.

NOVEMBER 13, 1928.

*Walter F. Maley* and *James E. O'Brien*, for appellant.

*John Fletcher*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

DE GRAFF, J.—Trial was had on a county attorney's information, accusing the defendant, Albert Grimm, and one Eugene Toney of the crime of assault on Glen H. Sweet, with intent to inflict great bodily injury. Grimm was tried separately, the trial resulting in a verdict of guilty, as charged. The trial court, however, submitted in the instructions the included offenses of assault and battery, and simple assault.

The primary contention of the appellant is that:

"If any crime at all was committed, it could not possibly have been more than either simple assault, or assault and battery."

At this point it may be stated that no objections or exceptions were taken to the instructions given to the jury by the trial court. A defendant in a criminal case waives error on appeal in every instance where proper exceptions are not taken below. *State v. Jackson*, 205 Iowa 592, with cases cited.

Exceptions were taken to rulings made by the trial court in sustaining objections of the State to the following questions, asked upon the cross-examination of the prosecuting witness, Glen H. Sweet:

"Q. Those are scratches on your face at this time, aren't they? Q. You are ordinarily able to take care of yourself, are you not? Q. Were you an officer on the 21st day of May? Q. Do you have a permit to carry a gun?"

Objections to these questions included immateriality, not proper cross-examination, and calling for opinion and conclusion of the witness. Clearly, the reference to scratches on the face of the witness, whether the prosecuting witness was an officer on the evening of the assault, and whether he had a permit to carry

1180

a gun, were immaterial. The question whether the witness was "ordinarily able to take care of himself" was subject to all of the objections entered. The permissible range of cross-examination of a witness is a matter largely within the sound discretion of the trial court. We have repeatedly reaffirmed the application of this rule. Further, the matters to which the inquiries were directed on cross-examination do not constitute a basis for impeachment, since they were immaterial and irrelevant.

We now turn to the challenge of the insufficiency of the evidence to sustain the verdict. It may be conceded that the crime of assault with intent to inflict great bodily injury is not susceptible of exact definition, although the crime of assault has a fairly well defined meaning, in the realm of criminal law. The gist of the major offense is the intent of the person assaulting, at the time of the assault. This intent is disclosed by the circumstances attending the assault, together with all relevant facts and circumstances antedating the assault. *State v. Schumann,* 187 Iowa 1212; *State v. Steinke,* 185 Iowa 481. Assault to do great bodily injury is not circumscribed or limited *per se* by the fact that the accused, at the time of the assault, used simply his fists.

There is no burden placed upon the State to prove that the defendant charged with the major offense, as in this case, used a club, billy, or other means or instrument whereby a more grievous injury could have been accomplished. It is said in *State v. Steinke,* supra:

"One may have the intent to inflict great bodily injury, without inflicting any injury at all, or he may intend only assault and battery, but go further than intended, and actually inflict a great bodily injury."

The quantum of injury may be taken into consideration by the jury in determining the defendant's intent, but it is not, in itself, determinative of that intent. See, also, *State v. Brackey,* 175 Iowa 599; *State v. Sayles,* 173 Iowa 374; *State v. Dickson,* 200 Iowa 17.

With these applicable legal principles in mind, let us examine the record evidence. The prosecuting witness, Glen H. Sweet, was an "under cover" in the employ of the state and Federal agencies for the enforcement of the prohibitory liquor

law. He was in the performance of his duties in Jasper County, Iowa, during the time immediately preceding the date of the assault, to wit, May 21, 1927. On May 20, 1927, he had arrested the two brothers of the defendant Albert. On the following day, the defendant, Albert Grimm, went from Newton to Des Moines, to secure appearance bonds for his brothers, but was unsuccessful. About 8 o'clock on that evening, the defendant and Eugene Toney were sitting outside a pool hall in Newton, where a casual conversation was had with W. E. Horn, a police officer in the city of Newton. The subject of this conversation involved Glen H. Sweet. Toney made inquiry of the whereabouts of Sweet, referring to the latter as Horn's friend. Apparently Horn did not understand to whom the reference was made, and to the question said: "What do you mean?" Toney said: "The stool pigeon,—the fellow that was with you last night." Horn made answer: "That is a state man." Whereupon Grimm said:

"Well, I will tell you that it doesn't make any difference whether that fellow was walking up the street with you,—I am going to whip him. When I get through with the G— d— ——, he never will be able to buy any more liquor."

The assault on Sweet happened about 15 minutes later. Sweet's version of the affair is as follows:

"When they got there [when they met Sweet on a street in Newton], Grimm rushed me and shoved me and hit me at the same time. He said, 'I'll fix you, you dirty stool pigeon, so you won't bother my brothers again,' and started hitting me, and Toney started kicking me."

At this point, Sweet pulled his gun, placed his attackers under arrest, and proceeded with them to jail. On the way to the jail, Grimm remarked that "it wasn't over yet; that the next time he [Grimm] would fix it so I [Sweet] wouldn't get my gun."

Sweet was 27 years old, 5 feet 4½ inches tall, and weighed 162 pounds. The defendant Grimm was about 6 feet 4, and weighed about 220 pounds. His companion, Toney, was about 6 feet tall, and weighed about 180 or 200 pounds. It is obvious that these two physical giants had the ability to inflict grave bodily injury upon Sweet, and the disposition to do so is shown

by the evidence. It was the gun in the hands of Sweet, after the initial stages of the assault, that caused the curtain to fall on the scene enacted in the peaceful town of Newton.

The triers of the facts in the instant case have spoken, as to the intent of the defendant Grimm in the commission of the assault as charged. The jury was entitled to take into consideration the discrepancies in weight of the parties attacking and the party attacked, and also what was said by the attacking parties immediately prior and subsequent to the assault. *State v. Dickson*, supra. We are constrained to hold that a jury question was presented.

One further proposition urged by the appellant involves the correcting of the judgment entry by the trial court. It appears that the defendant, in the first instance, was sentenced to an indeterminate period of five years in the penitentiary. The trial court, on the same day as the date of judgment entry,—to wit, October 13, 1927,—discovered the error, and, in the absence of the defendant, and without notice to either defendant or his counsel, "erased the word 'five' from the calendar entry, and inserted the word 'one' in lieu thereof." A bill of exceptions was signed by the court in this particular, upon the request of the defendant.

In correcting the entry in the manner as stated, the trial court simply made the penalty conform to statutory provision. A person convicted of the crime of assault with intent to inflict great bodily injury "shall be imprisoned in the county jail not exceeding one year, or be fined not exceeding five hundred dollars, or be imprisoned in the penitentiary not exceeding one year." Section 12934, Code of 1924. Clearly, no prejudice resulted to the defendant by reason of this correction. *State v. Herzoff*, 200 Iowa 889. Under the statute, this court is privileged to examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands. Section 14010.

The record before us contains no reversible error, and the judgment entered is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.