STATE OF IOWA, Appellee, v. WILLIAM CRANDALL, Appellant.

No. 44836.

OCTOBER 24, 1939.

REHEARING DENIED FEBRUARY 9, 1940.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, and Richard A. Stewart, County Attorney, for appellee.

Louis J. Kehoe, for appellant.

BLISS, J.—The offense of which the defendant was convicted took place on November 11, 1938, in Washington, Iowa. He was then 18 years old, and lived in said city with his parents. Cecil Replogle, upon whom the alleged assault was made, was 17 years old, and lived with his parents on a farm near Washington. The boys had been acquainted since the fall of 1935, and associated with about the same young people in that community. In July, 1938, the defendant became acquainted with Replogle's 15-year-old sister, and had a few

dates with her. Her parents objected to her being out until midnight, and to her keeping company with any of the boys, and asked Cecil to aid in enforcing their wishes in this matter. He admonished the defendant of his parents' wishes. The defendant resented this and persisted in his attentions to the young lady, and the record discloses no protest on her part. The two boys had a few wordy altercations over the matter, with an occasional blow. Each one accused the other of trying to run him off the highways in the operation of their automobiles, and of cutting in too soon in passing. As witnesses at the trial, each blamed the other as the aggressor and the one at fault. Each had the support of particular friends, and their accounts of what took place on these occasions were conflicting. It is not surprising that there was an unfortunate ending to the feud of these young people. On November 11, 1938 there was a football game in the afternoon at Columbus Junction. Cecil took his sister and a number of young people in his car, and the defendant rode in a car driven by Stanley McKeown. There was testimony that the McKeown car cut in very abruptly ahead of the Replogle car. That night after the game and after all had returned to Washington, the defendant and McKeown, in the latter's car, followed Replogle as he was taking a young lady to her home. Both cars came to a stop in the street in front of the young lady's home. There was another young girl who remained in the rear seat of Replogle's car. All three boys got out of their cars, and engaged in a heated discussion. There is a variance in their accounts of just what took place, but all agree that the defendant and Replogle engaged in a fight in which the defendant threw Replogle to the ground and kept him there until he had "taken back" certain claimed things he had said about the defendant, and had promised to behave better toward the defendant in the future. Replogle then got behind the wheel in his car and started the motor with his foot pressed on the clutch. The left front door of the car was open. It was hinged in front. The glass in the door was up, thus closing the opening. Both agree as to this. Defendant stood with his left hand on the steering wheel and his right hand on the back of the front seat. The boys were still engaged in conversation. As witnesses they disagreed as to what was said

and as to what subsequently took place. The defendant and McKeown testified that, after calling the defendant a vile name, Replogle started the car violently forward and closed the door forcibly, catching the defendant's right wrist between the door and the frame, thus shattering the glass in the door, and dragging the defendant forward, partly on the ground, for about three car lengths. Replogle denied this and testified that he gradually eased in the clutch, and the door swung shut with the forward movement of the car, and that then the defendant jumped on the running board, and struck at Replogle with his left fist and drove it through the glass, causing the pieces and particles of glass to scatter over the inside of the car. One of these slivers of glass struck Replogle's right eyeball, so cutting and injuring it that he lost the sight thereof. The young lady in the rear seat of the car corroborated Replogle in his version of what took place, particularly as to what happened after the scuffle outside of the car.

On this appeal the defendant assigns and argues the four following errors as grounds for reversal: 1. The court erred in overruling defendant's motion for a new trial based on the ground that there was insufficient evidence to justify the verdict of the jury. 2. The court erred in overruling defendant's motion for a directed verdict, at the conclusion of the evidence. 3. The court erred in admitting evidence of the operation of the McKeown car on the afternoon of November 11th, on the road to Columbus Junction, and in overruling defendant's motion to strike the same after it became apparent, beyond dispute, that the defendant was not driving that car and had no control over it. 4. The court erred in admitting evidence of the state's rebuttal witness, Kiesey, an officer who arrested defendant, over the objection of the defendant that the testimony was not rebuttal, and a violation of the rule requiring notice of additional testimony, and in refusing to strike this testimony. The italicized statements, in the examination following, is the testimony of which defendant complains. Kiesey testified as follows:

"Q. Where did you see him and under what circumstances? Defendant objects as not rebuttal.

"Court: Overruled.

"Defendant excepts.

"A. I saw him first at the Sinclair station, the Sinclair Oil Station.

"Q. Where is that? A. On North Marion Ave.

"Q. Go ahead and tell what happened there. Defendant objects as not rebuttal.

"Court: Overruled.

"Defendant excepts.

"A. The deputy sheriff and I went down and got Crandall at the filling station and took him to the county jail.

"Q. What was said down at the filling station, if anything? Defendant objects as not rebuttal.

"Court: I think the Court should know what he is ruling on.

"Q. Mr. Kiesey tell the Court and jury what was said down at the filling station by the defendant. Defendant objects as not rebuttal.

"Court: Overruled.

"Defendant excepts.

"A. Crandall was sleeping under the filling station, and I called to him to come out and he came out and the deputy sheriff with me told him he better come with us, and Crandall said '*I was afraid of that.*'

"Q. Where did you take him? A. To the County Jail.

"Q. Did you have any further conversation with him? Defendant objects as not rebuttal, if anything it is part of the State's case.

"Court: Overruled.

"Defendant excepts.

"Q. What did Crandall say if anything? A. We asked him to tell us his story and he says: '*Well, I finally caught up with the guy.*'

"Q. Was there anything more said? A. He told us what happened.

"The defendant objects to all this testimony, as not rebuttal and moves to strike it out for that reason."

█ Under the first two assignments of error, the defendant contends that the state failed to establish the allegations of the indictment with evidence sufficient to warrant the submission of the case to the jury, or to sustain the verdict of the jury. The defendant was charged with the crime of assault

with intent to inflict great bodily injury. This is a crime which is not susceptible of exact definition. It is also difficult to define with exactness or definite limitations just what a great bodily injury is. We have said at different times that it is an injury to the person of a more grave and serious character than an ordinary battery, but that it cannot be definitely defined. State v. Gillett, 56 Iowa 459, 9 N. W. 362; State v. Ockij, 165 Iowa 237, 145 N. W. 486; State v. Schumann, 187 Iowa 1212, 175 N. W. 75; State v. Dickson, 200 Iowa 17, 202 N. W. 225; State v. Grimm, 206 Iowa 1178, 221 N. W. 804. It is not necessary, in fact, that there be any injury inflicted, as where one attempts to inflict the injury, but fails. State v. Shaver, 197 Iowa 1028, 198 N. W. 329; State v. Steineke, 185 Iowa 481, 170 N. W. 801. While the extent of the injury may be taken into consideration as bearing upon the intent, it is not, in itself, determinative of that intent. State v. Grimm, supra. The gist, or the foundation of the offense, as this court has repeatedly held, is the intent with which the injury is inflicted, or attempted. State v. Malcolm, 8 Iowa 413, 415; State v. Parker, 66 Iowa 586, 589, 24 N. W. 225, and cases cited. above.

" 'The intent with which an act is done is an act or emotion of the mind seldom if ever capable of direct and positive proof, but is to be arrived at ·by such just and reasonable deduction or inferences from the acts and facts proved as the guarded judgment of a candid and cautious man would draw ordinarily therefrom.' '' State v. Gillett, supra [56 Iowa 459, 460, 9 N. W. 363.]

Necessarily, then, the intent, in most cases must be established circumstantially, and by legitimate inferences from the evidence. State v. Shaver, supra; State v. Gillett, supra; State v. Schumann, supra. As stated in State v. Grimm, supra: "This intent is disclosed by the circumstances attending the assault, together with all relevant facts and circumstances antedating the assault." See also State v. Woodward, 84 Iowa 172, 50 N. W. 885.

The principle that one intends the natural result of his act, has repeatedly been stated by the court. In State v. Gillett, above-cited, we approved as sound law an instruction, stating that:

" 'The law warrants the presumption or inference that a person intends the results or consequences to follow an act which he intentionally commits which ordinarily do follow such acts.' "

The same language was used in State v. Ockij, supra, 165 Iowa 237. In State v. Redfield, 73 Iowa 643, 35 N. W. 673, the court said, a person is presumed to intend the consequences which are ordinarily to be apprehended as the result of his voluntary act. In State v. Bennett, 128 Iowa 713, 714, 105 N. W. 324, 325, 5 Ann. Cas. 997, we said:

"A specific intent may be proved by circumstantial as well as by direct and positive evidence; and, where it is proven or admitted that the defendant committed an act which would be unlawful unless justified, the specific intent may be inferred or presumed from the unlawful act." See also State v. Jones, 70 Iowa 505, 30 N. W. 750, and State v. Woodward, 84 Iowa 172, 50 N. W. 885.

 With these principles in mind let us look at the record briefly. There was evidence to establish that on the evening in question the defendant had followed and overtaken Replogle and had engaged in a quarrel and fight with him; that Replogle was then seated in his car with the door closed and the glass up; that the defendant struck at him and drove his fist through the glass, thereby causing a splinter of the glass to enter his eye and deprive it of sight. The car was an old model and the glass was not shatterproof. In striking at Replogle and in breaking the glass, he was guilty of an unlawful act, for which there was no justification. Replogle was sitting but a few inches from the pane of glass. Defendant knew that it would likely break if he struck it with his fist, and he knew that if it did break, the flying pieces of glass would probably injure Replogle. It is true that he probably did not anticipate the particular injury to Replogle's eye which resulted, but he appreciated and apprehended that such an injury might reasonably be a probable consequence of his act. It was for the jury to say whether the defendant had the essential intent which is the gist of the crime charged. See also State v. Cummings, 128 Iowa 522, 105 N. W. 57; State v. Richardson, 179

318

Iowa 770, 162 N. W. 28, L. R. A. 1917D, 944; State v. Brackey, 175 Iowa 599, 157 N. W. 198, and cases cited above.

The prosecuting witness and the young lady with him testified that the defendant deliberately and intentionally broke the glass with his fist. The defendant McKeown denied this, but McKeown was contradicted by the minutes of his testi-mony which he signed before the grand jury, and by the testi-mony of members of that body. It is not for us to pass upon the veracity of the various witnesses or upon the weight of their testimony, or to disturb the verdict of the jury, or the judgment of the court, since both have substantial support in the evidence. It is a well-established rule that it is the province of the jury to determine questions of fact. This court will set aside these determinations only when the verdict is clearly against the weight of the evidence, and there is no substantial evidence to support it. While the testimony is conflicting, there is supporting testimony for every fact essential to the estab-lishment of the crime charged, and the finding of the jury is conclusive upon us. Citation of authority in support of this principle is unnecessary, but see State v. Harrington, 220 Iowa 1116, 264 N. W. 24; State v. Lowenberg, 216 Iowa 222, 243 N. W. 538; State v. Manly, 211 Iowa 1043, 233 N. W. 110, and cases cited therein.

We find no reversible error in the third assignment. In direct examination Replogle testified that the defendant was in a car driven by McKeown, which cut in on the Replogle car. Defendant did not object to the testimony when given. On cross-examination Replogle testified again that McKeown was driving. He was then asked, ''And as far as you know Crandall had nothing to do with the car?'' He replied, ''I do not know, sir.'' It was then that the defendant moved to strike all of the testimony relative to the operation of the car on the way to the ball game. Neither McKeown nor the defendant testified respecting the matter, or whether the de-fendant did have anything to do with the car's operation. The circumstances were proper to go to the jury. And under the whole record the jury could not have been misled.

In arguing the fourth assignment of error, on the oral submission, defendant's lawyer referred to the two statements complained of as rather ''cryptic''. It may be conceded that

the meaning which each was intended to convey is rather ambiguous and indefinite. The defendant had denied the commission of the crime charged, and all facts tending to implicate him, in his testimony. The inference reasonably to be drawn from his statement, ''I was afraid of that,'' on being arrested, would properly rebut his testimony. At least it indicates he was fearful that there was some basis for his arrest.

Respecting the last statement, ''Well, I finally caught up with the guy,'' it is difficult to tell whether it was a part of his narration of the pursuit of Replogle on the evening of the offense, or whether it was a slang expression that he had finally evened the score against Replogle. The defendant insists it had the last meaning, and therefore tended to show the defendant's intent, and was a part of the State's main case. It is often difficult to draw the line between what is and what is not rebuttal. Anything showing defendant's intent to inflict a great bodily injury, was a part of the State's original case. However the defendant had denied breaking the glass in the car or making any assault upon Replogle after he was in the car, or of having an intention of injuring him, or of having any knowledge that Replogle was hurt. We think the remark, accepting the meaning claimed for it by the defendant, was proper rebuttal to this testimony.

[6] The order in which testimony may be introduced lies very largely in the discretion of the trial court. For that reason the court has never felt justified in reversing, ''unless upon the clearest showing of prejudice.'' State v. Bruce, 48 Iowa 530, 538, 30 Am. Rep. 403.

Under subsection 6 of section 13846, Code 1935, the court may for good reasons, in the furtherance of justice, permit, in rebuttal, the introduction of testimony properly a part of the main case, and the fact that it was not ostensibly so admitted would not justify a reversal in the absence of a showing of prejudice. State v. Curran, 51 Iowa 112, 118, 49 N. W. 1006. It oftentimes occurs that testimony is used in rebuttal which might have been used as a part of the State's direct testimony in its main case. This has been true notwithstanding the name of the witness was not endorsed on the indictment. Even though it may not be strictly rebuttal, if it has a tendency to disprove testimony on the part of the defendant.

320

it is not prejudicial error to admit it. That this has frequently been the holding of the court, see State v. Munchrath, 78 Iowa 268, 277, 43 N. W. 211; State v. Burris, 198 Iowa 1156, 1163, 198 N. W. 82; State v. McCumber, 202 Iowa 1382, 1384, 212 N. W. 137; State v. Smith, 215 Iowa 374, 245 N. W. 309; State v. Gardiner, 205 Iowa 30, 35, 215 N. W. 758; State v. Slycord, 210 Iowa 1209, 232 N. W. 636; State v. Dimmitt, 184 Iowa 870, 873, 169 N. W. 137; State v. Graham, 203 Iowa 532, 211 N. W. 244. We feel that the introduction of this testimony was in no way harmful to the defendant. He did not deny making the statements.

Like all criminal cases, this one resulted unfortunately to both participants. The record has disclosed no criminal instincts on the part of the defendant, and we would be pleased if our decision could be rightfully otherwise, but we have gone carefully through the abstracts and the arguments, and find that there is no reversible error, and that the defendant has been fairly and impartially tried. We therefore affirm the judgment of the trial court.—Affirmed.

OLIVER, C. J., and HAMILTON, RICHARDS, SAGER, STIGER. HALE, and MILLER, JJ., concur.