STATE OF IOWA, Appellee, v. JOHN DAVIS, Appellant.

No. 46620.

JULY 27, 1945.

REHEARING DENIED SEPTEMBER 22, 1945.

C. R. Barnes, of Shenandoah, and Nichols & Nichols, of Sidney, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and James A. Howard, County Attorney, for appellee.

WENNERSTRUM, J.— ██ The defendant was charged in a county attorney's information filed in the district court of Page County, Iowa, with the crime of larceny from the person of Jennie Maxwell of a sum of money in excess of $20. The defendant entered a plea of not guilty. A trial was had and on submission of the case to the jury it returned a verdict of guilty of the crime of larceny of property in excess of $20. A motion for a new trial, including exceptions to instructions, was later submitted and was overruled by the trial court. The defendant thereafter was sentenced to imprisonment in the state penitentiary at Fort Madison, Iowa, for a period not to exceed five years. He has appealed.

The crime with which the appellant is charged in the county attorney's information occurred on May 14, 1943. The money was taken from Jennie Maxwell, a maiden lady, who at the time of the commission of the crime was sixty-four years of age. She lived alone in her own home in Shenandoah, Page County, Iowa, and from the facts disclosed by the record the conclusion could be reached that she was somewhat eccentric and a recluse. She

was the owner of several houses which she rented and also possessed at least three annuity contracts from which she received additional monthly income. From these several sources she had accumulated, as disclosed by the record, in excess of $7,000, which she kept on her person in a sort of money belt sewed and attached to a petticoat. We shall not set out the evidence which was presented as to facts involving the interested parties prior to the commission of the crime. It is sufficient to state that on May 14, 1943, at about six o'clock p. m., Hazel Wilder, the wife of John Wilder, came to the home of Jennie Maxwell and gained admittance under the pretext of endeavoring to obtain rental living quarters from Miss Maxwell. A short time thereafter John Wilder came to the home and was admitted. Miss Maxwell testified that John Wilder bound her to a chair, gagged her and blindfolded her, and then carried her from the room to a rear room in the home. It is further shown that the Wilders then made a search of the house for money but were successful in locating only a small amount at that time. Mr. and Mrs. Wilder testified that after they were unable to locate any substantial amount of money John Wilder left the house and returned with John Davis, the appellant in the present case. According to the testimony of Miss Maxwell and the Wilders, Davis discovered the money attached to the petticoat of Miss Maxwell. This garment was torn and cut and it is the testimony of Miss Maxwell that while this garment was being removed from her and she was struggling, the blindfold which had been placed upon her eyes momentarily slipped down and that while a match was lighted she recognized the appellant, Davis. She also testified that she recognized his voice. It should be here stated that Mr. and Mrs. Davis had lived for a time in one of the rental properties of Miss Maxwell. John Davis had been in the Maxwell home a number of times for the purpose of paying the rent.

The testimony presented discloses that the arrests for the commission of the crime charged in this case were not immediately made after the crime was committed. Hazel Wilder was arrested in Milwaukee, Wisconsin; John Wilder was later arrested in Cheyenne, Wyoming; and the appellant was taken into custody in Shenandoah, coming there voluntarily from Council Bluffs after he had learned that he was charged with the crime.

It was also shown that Miss Maxwell did not originally connect the appellant with the crime and there is testimony that she had made statements that she did not know who had committed it. The record discloses that John Wilder entered a plea of guilty to the crime of larceny and was sentenced to a term of five years in the state penitentiary. He is now serving that sentence. It is further shown that at the time of the trial Hazel Wilder had not entered any plea to the charge filed against her, but it is disclosed by amendments to the motion for a new trial that, subsequent to the trial of John Davis, Hazel Wilder entered a plea of guilty to the crime of grand larceny. She was sentenced to a term of not to exceed five years in the women's reformatory at Rockwell City, Iowa, which sentence at the same time was ordered suspended during her good behavior and she was paroled to the sheriff of Page County, Iowa. The manner in which the charges against the two Wilders was disposed of has been critically commented upon by counsel for the appellant in the presentation of his claimed errors of the trial court. There was considerable other testimony presented at the trial but such portions of it as will be necessary to comment upon will be hereafter referred to in our discussion of the alleged errors of the trial court as claimed by the appellant.

I. The appellant assigns as his first ground for reversal that the trial court committed error in its refusal to dismiss the then pending county attorney's information charging the crime of larceny from the person, upon which he was later tried, because of the fact that the appellant had originally been charged in a preliminary information filed in a justice court with the crime of robbery of Jennie Maxwell. This preliminary information was filed on September 23, 1943. It is further shown that on September 29, 1943, the appellant waived to the grand jury on the charge as originally filed and the proceedings in this matter were then transcripted and docketed in the district court of Page County, Iowa. On October 5, 1943, a county attorney's information was filed in the district court of Page county, charging the appellant, John Davis, with the crime of larceny from the person of Jennie Maxwell. The original charge apparently was never submitted to the grand jury and was dis-

missed on the motion of the county attorney on January 5, 1944. It is the contention of the appellant that once a charge is made by the filing of a preliminary information, which is thereafter transcripted to the district court, it becomes a case in that court and can only be disposed of by action' of the grand jury. The appellant contends that, inasmuch as larceny from a person (section 13010, 1939 Code) is an included offense in the charge of robbery (section 13038, 1939 Code), the county attorney cannot usurp the function of the grand jury by filing a county attorney's information to a charge which is a lesser charge than the one originally filed and thereafter dismiss the original with the approval of the court. It is contended that since the original case which was dismissed and the crime charged in the county attorney's information, under which the appellant was tried, were necessarily one and the same a dismissal of the first should carry with it a dismissal of the lesser offense.

It is a significant fact that the appellant does not cite any authority for his contention. That, in itself, necessarily indicates the weakness of his position. This situation, however, does not justify us in failing to give consideration to this complaint. We deem it advisable to make some comment thereon.

We hold that there is basis for the action taken by the district court in its refusal to dismiss the county attorney's information and for its prior action in dismissing the charge of robbery transcripted to the district court for submission to the grand jury without consideration by that body. Code section 14027, 1939 Code, is as follows:

"14027 Dismissal by court—effect. The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a misdemeanor; but it is not a bar if the offense charged be·a felony."

It will be observed that the statute definitely states that

the dismissal ''is not a bar'' to another prosecution ''if the offense charged be a felony.''

It would thus appear that the dismissal of the original charge necessarily would not be a bar to another charge of a lesser nature which is an included offense to the first charge.

It is stated in State v. Veterans of Foreign Wars, 223 Iowa 1146, 1148, 274 N. W. 916, 917, 112 A. L. R. 383, 384, that: .

''There are three periods of the prosecution in which a nolle prosequi may be entered, namely, before the jury is impaneled, while the case is before the jury, and after the verdict.''

This last-noted authority does not in any way indicate that a dismissal cannot be had before a grand jury has considered a pending charge.

A further authority which justifies the action of the district court in the present case is the statement found in 14 Am. Jur. 966, section 295, which is as follows:

''If it [nolle prosequi] is entered before jeopardy has attached, it does not operate as an acquittal, so as to prevent a subsequent prosecution for the same offense.''

To the same effect is the statement in 14 Am. Jur. 968, section 299, which is as follows:

''The latter, when arraigned upon an indictment subsequently found and returned by the grand jury for the same crime, cannot, by plea in abatement or motion to quash, draw in question the rightful disposition of the former indictment by nolle prosequi.''

We have held that a defendant has no legal right to have his case investigated by any particular grand jury. State v. Bige, 195 Iowa 1342, 1346, 193 N. W. 17; State v. Carter, 144 Iowa 371, 375, 121 N. W. 801; State v. Wilson, 166 Iowa 309, 317, 144 N. W. 47, 147 N. W. 739. We have also held that a county attorney's information is a legal and constitutional mode of bringing a defendant to trial. Jones v. McClaughry, 169 Iowa 281, 305, 151 N. W. 210; State v. Ostby, 203 Iowa 333, 337, 210 N. W. 934, 212 N. W. 550. This court has also held that

the statement and principles announced in our cases relative to an indictment should apply to cases based on county attorney's informations. State v. Albertson, 227 Iowa 302, 305, 288 N. W. 64. If the appellant's case had been considered by a grand jury that body could have returned an indictment for a lesser offense than that of robbery. We hold that a county attorney's information under the same circumstances should be considered as though it were an indictment.

We find no merit in the contention of the appellant as commented upon in this division.

■ II. The appellant makes complaint of the ruling of the trial court in refusing to strike the testimony of Jennie Maxwell, asserting that this witness refused to submit to cross-examination to such an extent as to deny to the appellant his constitutional right to be confronted with the witness. The basis for this particular complaint grows out of Miss Maxwell's failure to answer directly and without equivocation certain questions propounded to her on cross-examination. It is very apparent, as disclosed by the record, that Jennie Maxwell was an evasive witness. She undoubtedly is, as her testimony shows, an eccentric individual. We do not deem it necessary to set out portions of her cross-examination which disclose these facts. It is sufficient to state that her answers justify our characterization of her as heretofore set forth.

The art of cross-examination has often been the subject of discussion by bench and bar. Many articles and books have been written in regard to this phase of trial tactics. We do not believe that a legal opinion is the place to particularly comment on the way a witness of the character under discussion should be handled. We have examined the record, however, and cannot conclude that the witness refused to be cross-examined. The portion of the cross-examination to which criticism is directed was had during the latter part of an afternoon session. It was concluded the following morning. During this latter examination there were no instances such as occurred the prior afternoon. The witness answered the questions then without hesitancy, and where there was any hesitancy the court directed that the witness answer. During this last period of cross-examination counsel for the appellant had ample opportunity to

develop his theory of the case. It is significant that the counsel for the appellant did not in any way seek to interrogate the witness as to the fact that the blindfold over her eyes became loose and that she observed the appellant, John Davis, and at that time recognized his voice.

In connection with the question that we have heretofore considered it might be well to note that where a refusal to submit to cross-examination has occurred the evidence elicited on direct examination has been properly stricken. Cumberland R. Co. v. Girdner, 174 Ky. 761, 192 S. W. 873, 874; Thomas v. Dower, 162 Wash. 54, 297 P. 1094, 1095; Stephan v. United States, 6 Cir., Mich., 133 F. 2d 87, 97 [certiorari denied, 318 U. S. 781, 63 S. Ct. 858, 87 L. Ed. 1148].

In commenting on a situation somewhat similar to the one presented in this case, it is stated, in Stephan v. United States, supra, as follows:

"The general rule is that 'where the witness after his examination in chief on the stand has refused to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed and his direct testimony should be struck out.' Wigmore on Ev., supra, Sec. 1391, p. 112, and cases cited in the footnotes. But to this general rule there are many exceptions. One is that 'on the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result.' Wigmore further states, 'Courts treat this situation with varying degrees of strictness. It should be left to the determination of the trial judge, regard being had chiefly to the motive of the witness and materiality of the answer.' See Gibson v. Goldthwaite, 7 Ala. 281, 42 Am. Dec. 592; Flannery v. Commonwealth, Ky., 51 S. W. 572; Scott v. McCann, 76 Md. 47, 24 A. 536; Succession of Townsend, 40 La. Ann. 66, 3 So. 488."

A defendant charged with a crime has the right to have the witnesses for the state cross-examined and this right should be extended liberally. State v. Christy, 198 Iowa 1302, 1308, 201 N. W. 42. The extent of the cross-examination is within the discretion of the court. Colburn v. Krabill, 232 Iowa 290,

293, 3 N. W. 2d 154. We hold that in the instant case there was no abuse of discretion on the part of the trial court and that under the entire record it is shown that the appellant had ample opportunity to cross-examine the witness Jennie Maxwell. We find no justification for striking the testimony of this witness.

III. The appellant asserts that there has not been sufficient corroborative evidence to substantiate the testimony of the admitted accomplices, John and Hazel Wilder, and to justify the submission of the case to the jury. He maintains that there should have been a directed verdict. We have heretofore held that the court was correct in overruling the motion to strike the testimony of Jennie Maxwell. It is our opinion that with her testimony in the record definitely identifying the appellant as a participant in the crime there was sufficient corroboration to submit the case to the jury. There is other corroborative evidence to which the appellant objected and he now makes the claim that there was error in its admission because it was not corroborative on account of the remoteness of time. This contention would go to the weight of the evidence, which is a matter for the jury to pass on. We hold that under the entire record the statutory requirement for corroboration of accomplices (Code section 13901, 1939 Code) has been met.

IV. It is the further contention of the appellant that the court committed error in submitting certain included offenses and he maintains that if he is guilty of any crime he was guilty of larceny from the person, with which crime he was charged in the county attorney's information. It is appellant's claim that the evidence did not justify his conviction of the crime of grand larceny as found by the jury. With this contention we cannot agree. We held in State v. Marshall, 206 Iowa 373, 376, 220 N. W. 106, 107, that larceny is an included offense in the charge of larceny from the person. We there stated as follows:

"In other words, is larceny necessarily included in a crime of larceny from the person? To our minds, there can be but one answer to this question. Before the higher crime can be proven, every element of a charge of larceny must be proven, to which must be added proof that the property is taken from the person

of the prosecuting witness, to make the higher charge. If the taking of the property of the prosecuting witness is shown to have been in fact a larceny, though it was not taken from the person, then there is no reason why the defendant could not be convicted of larceny, under a charge of larceny from the person. We held, in State v. Mikesell, supra, that the crime of larceny from a building necessarily includes the crime of larceny, and that, under a charge of larceny from a building in the nighttime, a conviction of simple larceny might be sustained. See, also, State v. Nordman, 101 Iowa 446.''

In the case of State v. Brooks, 181 Iowa 874, 880, 165 N. W. 194, 196, we set forth the basis upon which included offenses should be submitted to a jury, and stated:

''On the other hand, included offenses should be submitted if (1) there is any evidence of their commission; (2) if, under the evidence, 'the jury might believe the defendant guilty' thereof (State v. Mitchell, 68 Iowa 116, State v. Atherton, 50 Iowa 189, State v. Trusty, 118 Iowa 498, at 500); (3) if there be some evidence from which a jury may believe the included offense only was committed (State v. Vinsant, 49 Iowa 241, at 244, State v. Woodworth, 168 Iowa 263, State v. Perkins, 171 Iowa 1, at 2).''

Conceding but not holding that the included offense of larceny should not have been submitted, the error, if any, was not prejudicial to the appellant.

In the case of State v. Haugh, 156 Iowa 639, 640, 137 N. W. 917, we made this pertinent statement:

''We have never held that it constitutes prejudicial error to instruct with reference to an included crime, even though under the evidence a conviction for the crime charged, without an instruction as to the included crime, would have been sustained. It does not lie in the mouth of the defendant to complain that he has been convicted of a lower degree of crime than that which the evidence tends to establish. It is not to be presumed from the fact that the jury failed to convict of rape that they did convict of an assault with intent to commit rape without find-

ing from the evidence beyond a reasonable doubt that the defendant was guilty of that crime. If the jury exercised undue leniency in their finding as to the degree of the crime committed, such error has resulted to defendant's benefit, and he can not complain. It is enough to say that, so far as the general sufficiency of the evidence is concerned, the verdict is not without ample support."

In support of this last-cited holding, see, also, State v. Barkley, 129 Iowa 484, 485, 105 N. W. 506; State v. Shepherd, 129 Iowa 705, 708, 106 N. W. 190; State v. Dimmitt, 184 Iowa 870, 871, 169 N. W. 137; State v. Williams, 197 Iowa 813, 815, 197 N. W. 991; State v. Shaver, 197 Iowa 1028, 198 N. W. 329; State v. Lewallen, 198 Iowa 382, 391, 199 N. W. 266.

V. It is the further claim of the appellant that the evidence upon which he was convicted was incredible and impossible of belief and that the verdict cannot stand. We hold that the evidence was sufficient to submit the case to the jury and it was for the jury to pass upon the sufficiency and weight of it.

There are other contentions of the appellant which are somewhat similar in their nature to those heretofore commented on but we do not deem it necessary to refer to them with particularity. Our holdings and comments heretofore made justify our conclusion that they are without merit. Upon a review of the entire record we have reached the conclusion that the case was properly submitted to the jury, that the verdict of the jury was supported by sufficient evidence, and that there was no prejudicial error upon which we could justify a reversal. We therefore affirm.—Affirmed.

MILLER, C. J., and SMITH, MANTZ, GARFIELD, OLIVER, BLISS, and HALE, JJ., concur.

MULRONEY, J., specially concurs.

MULRONEY, J. (specially concurring)—My concurrence goes to the result. I do not think the trial court should have submitted the included offense of larceny, of which crime defendant was convicted. The rule is that where, under the evidence,

the defendant is clearly guilty of the crime charged, or not guilty, then other offenses should not be submitted. State v. Sterrett, 80 Iowa 609, 45 N. W. 401; State v. Marshall, 206 Iowa 373, 220 N. W. 106 (cited in the majority opinion), where a number of cases are cited at page 377 of 206 Iowa, page 107 of 220 N. W., supporting the rule that:

"* * * even under the charge, if there is no evidence from which the jury could find the defendant guilty of the included offense, then such included offense need not be submitted."

In the last-cited case the offense of larceny was submitted under the indictment for larceny from the person because there was evidence that the watch, which was the subject of the larceny, might have fallen from the owner's pocket in a scuffle. The test applied was: "* * * whether or not there is any evidence in the case under which it could be said that the jury could have found the defendant guilty of larceny, instead of larceny from the person."

It is true that the rule is usually stated that the included offense "need" not be submitted if the evidence shows that defendant is clearly guilty of the crime charged or not guilty. This is probably because as a rule no error results upon which defendant can secure a reversal. State v. Haugh, 156 Iowa 639, 137 N. W. 917; State v. Barkley, 129 Iowa 484, 105 N. W. 506; State v. Shepherd, 129 Iowa 705, 106 N. W. 190; State v. Dimmitt, 184 Iowa 870, 169 N. W. 137. But in any trial there should be no instruction upon a theory that has no support in the evidence. Larceny is not a degree of the crime of larceny from a person. They are both distinct crimes. One can argue that the crime of larceny from a person cannot be committed unless the crime of larceny is committed and therefore the latter should be submitted. But the argument would be equally forceful that where the evidence shows only that the crime of larceny from a person was committed, and the jury fails to convict of that crime, then the defendant could not have been guilty of larceny.

The trouble with instructions of included offenses when the evidence shows only the commission of the offense charged is that they allow the jury to deal leniently with the defendant. This is not the prerogative of a jury. Here the jury must have

believed the defendant guilty of the crime of larceny from a person. That was the only crime established by the evidence. Yet the jury returns a verdict of guilty of larceny.

I think there should have been no instruction upon the included offense. I feel that the jury verdict exhibits clemency rather than judgment. Of this the defendant cannot complain, but I think the practice of submitting included offenses under such a record should be condemned in our opinions.