114 N.W.2d 526 (1962)
STATE of Iowa, Appellee,
v.
Gust DROSOS, Appellant.
No. 50462.
Supreme Court of Iowa.
April 3, 1962.
Rehearing Denied June 12, 1962.
*527 George A. Gorder, Sioux City, for appellant on appeal; Donald E. O'Brien, Sioux City, for appellant on trial.
Evan Hultman, Atty. Gen., John H. Allen, Asst. Atty. Gen., Des Moines, and Edward L. Samore, County Attorney, Sioux City, for appellee.
LARSON, Justice.
Pursuant to a grand jury indictment November 15, 1960, charging the defendant Gust Drosos with the crime of murder for killing George D. Pappas, and his plea of not guilty, and not guilty by reason of insanity under Section 777.18, Code of Iowa, 1958, I.C.A., a trial by jury was had and defendant was found guilty of murder in the first degree. He was sentenced to imprisonment in the Iowa State Penitentiary for life. From this conviction and sentence he appeals.
This record discloses that George D. Pappas was an attorney for the estate of William Drosos, defendant's brother, that defendant contested his brother's death-bed will, that Pappas was a witness in support of the will, and that subsequent to a final decision of this court in the contest Pappas advised defendant that he had lost. When so informed in church on Sunday, September 4, 1960, defendant rejected that conclusion and told Pappas, "I will come to your office sometime this week." He came on Tuesday, but Pappas was in court and he *528 left. About 8:30 the next morning he was back, armed with a knife and a revolver. Pappas was sitting behind his desk counting some money and when he "didn't agree with my questions or answers", defendant stabbed Pappas in the stomach. Pappas fled into the hall and fell in an attempt to reach a doctor's office. Defendant followed and, in front of witnesses, shot him as he lay on the floor. After retrieving his five-inch blade boning knife, defendant disposed of it in a trash can where it was later found by the police, and still later became an exhibit herein without objection. He then proceeded to the police station, told of his deed, and surrendered the revolver. Pappas died on September 13, 1960, as a result of the knife wound.
Defendant relies upon six assignments of error to sustain his contention that he failed to receive a fair trial. Being somewhat doubtful of their sufficiency, counsel in oral argument asks us to carefully search the record for any other prejudicial error that might appear. This being our duty, we have done so, and find none.
I. In his first assignment defendant questions the sufficiency of the evidence to support the verdict. He contends the evidence compels a finding that he was insane at the time he committed the crime, and that due to certain alleged statements made to the jury by the prosecutor in final arguments, the verdict did not reflect his guilt or innocence of the crime charged.
It is well settled in this jurisdiction that in a criminal prosecution the question of defendant's mental competency is for the jury if there is a material conflict in the testimony State v. Brewer, 218 Iowa 1287, 254 N.W. 834; State v Geier, 111 Iowa 706, 83 N.W. 718. We do not try the issue anew on appeal, but simply review the evidence to determine whether there is substantial conflict. State v. Berry, 241 Iowa 211, 223, 40 N.W.2d 480, and citations. Of course it is defendant's burden to prove his defense of insanity by a preponderance of the credible evidence. State v. Bruntlett, 240 Iowa 338, 346, 36 N.W.2d 450; State v. Thomas, 172 Iowa 485, 496, 154 N.W. 768; State v. Humbles, 126 Iowa 462, 463, 102 N.W. 409. It is the jury that weighs the evidence and from it finds the fact.
Defense evidence of insanity was given by Dr. Carroll Brown, a physician and surgeon specializing in brain or neurological surgery, and Dr. Gerald Rausch, a physician specializing in neurology, psychiatry, and electro-psychiatry. They testified as to certain physical ailments afflicting defendant, including high blood pressure, a malignancy of the throat being treated at Iowa City, and a stroke suffered in 1949 affecting his speech and memory due to brain damage. Mentally he was disturbed about the will contest. Neither doctor felt able or competent to express an opinion as to appellant's mental condition at the time of the crime, some months prior to their examination of him. Neither testified that defendant was unable to comprehend the nature and consequences of his act or that he was unable to distinguish right from wrong. Dr. Rausch said the stroke left him abnormal, that he had lost his ability to have "feeling" and "emotions", that he had paranoid trends with impaired judgment and that it was not curable. He felt persecuted and blamed it all on Pappas, and was a borderline mental deficient. Dr. Brown was not impressed with anything unusual in his behavior or in the manner in which he spoke, which was calm and cordial. It is true the doctor found defendant believed Pappas helped execute and administer a will which deprived him of sums he claimed were his and which he expected to receive from his brother's estate, that Pappas helped put him out of "my own house" located on lands willed to his brother's widow, that he charged Pappas with robbing him, that he believed he was being persecuted by Pappas, and that he believed his act was in "self-defense". The state contends this evidence did little more than indicate a motive for the killing, and was certainly not conclusive as to his inability to comprehend the nature and consequence *529 of his acts, the sanity test we apply in this state.
The state also produced testimony of the police tending to show that defendant knew his acts at that time were wrongful, that he appeared normal, and that immediately after the attack he went to the police station "because that is the law." Others who knew him testified his appearance and demeanor immediately after the assault were no different than they had been for the past twenty years, and that his speech impediment was due to a lack of education and had not changed in recent years. The testimony taken as a whole, we think, discloses a material and substantial conflict in the evidence.
Furthermore, defendant himself took the stand and the jury observed his conduct, appearance, speech and demeanor. We being satisfied that there was a substantial conflict as to his sanity at the time of the crime, the jury-finding that he was not innocent by reason of insanity is binding upon us. State v. Berry, supra, 241 Iowa 211, 223, 40 N.W.2d 480, and citations; 23A C.J.S. Criminal Law § 1130, pp. 284, 286.
Under this assignment defendant also complains of a statement allegedly made by the county attorney in his argument to the jury to the effect that if defendant were found not guilty by reason of insanity he would go free and walk the streets. While it may be true such a statement would be improper and, if true, might well be such misconduct as to justify a reversal, such misconduct to be considered on an appeal must be preserved by a timely objection and proper exception. It cannot with certainty now be considered a record of misconduct. State v. Berry, supra; State v. Walker, 200 Iowa 341, 343, 204 N.W. 215. In the latter case, as here where the record did not contain the challenged argument, it was held fatal to the assignment. There also the only reference to the statements in question is found in the motion for a new trial. Those statements were flatly denied, and we found no occasion to review the situation.
In State v. Williams, 238 Iowa 838, 849, 28 N.W.2d 514, this matter was fully discussed and it was flatly held that when first raised in the motion for a new trial such an objection comes too late, citing State v. Banks, 227 Iowa 1208, 1211, 290 N.W. 534, and State v. Lounsbury, 178 Iowa 555, 159 N.W. 998. As further bearing on this matter, see State v. Kobylasz, 242 Iowa 1161, 1170, 47 N.W.2d 167; State v. Stennett, 220 Iowa 388, 395, 260 N.W. 732; State v. Peacock, 201 Iowa 462, 464, 205 N.W. 738.
Such a holding, of course, does not affect the rule that a finding of innocence by reason of insanity requires acquittal. It is simply that we cannot interfere if the record fails to show the statements made in the challenged argument. Here they were not recorded or preserved. However, the record does disclose no objection was made to any such statements at the time, and recites a denial by the county attorney when the motion for a new trial raised the question for the first time. The matter, therefore, is not subject to review by us in this appeal.
II. In his second assignment of error defendant contends the trial court improperly excluded testimony of a state's witness in cross-examination. While the extent of cross-examination is largely left to the sound discretion of the trial court (State v. Davis, 236 Iowa 740, 19 N.W.2d 655; State v. Grimm, 206 Iowa 1178, 1180, 221 N.W. 804; 2 Underhill's Criminal Evidence, 5th Ed., § 503,) under the circumstances here we agree that such matter inquired of was properly excluded.
As a general rule the admissibility of testimony from a preliminary hearing or former trial rests upon the unavailability of the witness whose testimony is introduced. State v. Brown, 152 Iowa 427, 436, 132 N.W. 862, and citations.
On cross-examination Detective Warnstadt was asked if he heard the questions *530 and answers given by defendant at the preliminary hearing. The state objected on the grounds that it was irrelevant, incompetent, hearsay, and not the best evidence because it asked about testimony the defendant necessarily present at this trial gave at the preliminary hearing. By way of explanation defendant offered to show defendant had stated in Warnstadt's presence, in answer to the question, "And you were going to kill him then?" the following: "No, no, not going to kill him. I was going to say to him, I was going to talk to him." Counsel stated it was not for the purpose of impeachment, and the court sustained the state's objection.
While it is true the defendant has the right to have his theory of the case explained to the jury (State v. Brooks, 192 Iowa 1107, 1117, 186 N.W. 46, 51), we have consistently held the testimony of a witness in a preliminary hearing or former trial may be admitted only when the witness is unavailable for trial. State v. Brown, supra. Here the witness whose testimony was solicited was available to testify as to his intention in going to the Pappas office. In fact he did so. There was no error in the ruling. As bearing on this question see also State v. Davis, supra, 236 Iowa 740, 19 N. W.2d 655; State v. Grimm, supra, 206 Iowa 1178, 221 N.W. 804; and 2 Underhill's Criminal Evidence, 5th Ed., § 503.
III. The trial court overruled objections to the admission of Exhibits "6" and "2". Exhibit "6" was a spent .32 caliber lead bullet found by Chief of Police O'Keefe at the scene of the shooting a few minutes afterwards, and Exhibit "2" was a .32 caliber revolver, given to the police by defendant and later identified by him as the gun used to shoot Pappas.
Properly identified articles found at the scene of the crime which tend to show its commission or the manner thereof, or explain some related matter in issue, are admissible in evidence for jury inspection. State v. Christie, 243 Iowa 1199, 1210, 53 N.W.2d 887, 54 N.W.2d 927; State v. Jones, 233 Iowa 843, 10 N.W.2d 526; State v. Williams, 195 Iowa 785, 192 N.W. 901; 2 Wharton's Criminal Evidence, 12th Ed., § 675; 22A C.J.S. Criminal Law § 709.
The relevancy of such demonstrative evidence is usually a question to be determined by the proper exercise of the trial court's discretion. State v. Christie, supra; 2 Wharton's Criminal Evidence, 12th Ed., § 673.
Chief O'Keefe testified he arrived at the scene of the shooting shortly thereafter, found the spent bullet on the floor, put it in his pocket, and when he returned to the station placed it in an envelope and gave it to Bayne Linden, Assistant Superintendent of the Identification Bureau. He testified it was substantially in the same condition at the time of the trial as when he first found it. Officer Linden testified he received the bullet from Chief O'Keefe and it was in his possession, locked in a special place in the bureau where such objects are kept, and that it was in substantially the same condition at the time of trial as when he received it.
Captain Kumzak testified defendant came to the station about a quarter to nine of the morning of the crime, handed him a package and said, "Here's the gun, I shot George Pappas." When given to him, the gun was assembled and fully loaded except for one spent shell in the chamber. He said the gun was in substantially the same condition as when he received it, that he turned it over to Lieutenant Dik of the Detective Bureau. However, Lieutenant Warnstadt testified that it was he who received the gun from Captain Kumzak when it was delivered to that bureau, and that he gave it to Bayne Linden for safekeeping. Both Warnstadt and Linden testified it was in substantially the same condition at the trial as when they received it. Nevertheless, due to the fact that Lieutenant Dik was not called, the trial court did not admit the gun in evidence until on cross-examination *531 defendant himself identified the gun as the one he used in the shooting. Both exhibits were properly admitted.
It was stated in State v. Jones, 233 Iowa 843, 848, 849, 10 N.W.2d 526, 529: "The rule is that articles, including those found at the scene of the crime, which are properly identified and which tend to show the commission of the crime or the manner in which it was committed, or to elucidate some matter in issue, are admissible in evidence for inspection and observation by the jury. * * * There was no evidence at any time during the trial that there had been a change in condition or appearance of the articles identified and in the absence of any such testimony the identification was sufficiently complete to make it proper for them to be exhibited to and submitted to the jury."
Defendant's further contention that Exhibit "6" was not admissible on the ground that it was not mentioned in the notice of additional testimony is also without merit. In the recent case of State v. Hill, 244 Iowa 405, 415, 57 N.W.2d 58, we pointed out that the provisions of Section 780.10 of the Code, I.C.A., apply only to additional witnesses, not to documents or other exhibits even though they were not before the grand jury.
In this assignment defendant also contends the court allowed the state improperly to cross-examine him as to his visits to Pappas' office, a matter not specifically gone into on direct examination. On direct examination defendant told of his Sunday meeting with Pappas at church. He testified Pappas told him "You lost", and he answered "I told him back `I am not lost', and `I will come to your office sometime this week'." In answer as to why he was going to see Pappas he said, "I was going to see him to fix up the case." The state then attempted to bring out in cross-examination what later occurred when he came to Pappas' office, contending it did not contravene the provisions of Section 781.13.
In the recent case of State v. Shepard, 247 Iowa 258, 265, 266, 73 N.W.2d 69, 73, we gave consideration to Section 781.13, Code, 1958, I.C.A., which states: "When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief", and made this observation: "It will be observed that in terms this section limits the cross-examination of a defendant somewhat narrowly, and it is sometimes contended the cross-examination must be confined to subjects already dealt with on direct examination. We think, however, this argument, properly analyzed, does not have the restrictive and limiting effect which its proponents claim for it. The broad subject of the direct examination, if material at all, is the guilt or innocence of the defendant." Reference was then made to Wigmore on Evidence, Third Ed., Vol. VIII, section 2276(d), page 448, which upheld the right of cross-examination on any relevant subject even under statutes such as ours.
The defendant relies upon our decision in State v. Leuty, 247 Iowa 251, 73 N.W.2d 64, but the distinction, we said in the Shepard case, lies in the word "relevant". In the Leuty case it was decided the cross-examination went far into irrelevant and improper matters.
Obviously here defendant's actions, in compliance with his promise to come to Pappas' office sometime that week, were relevant and material to the issue, i. e., his intent and purpose when he came to see Pappas. The events which occurred at that office on September 7, 1960, were proper subjects of inquiry, and we must agree that the trial court did not abuse its discretion in holding the matter was opened by defendant and in permitting the cross-examination thereon. The discretion of the trial court in such matters is quite broad. State v. Ragona, 232 Iowa 700, 703, 5 N.W.2d 907; State v. Archibald, 208 Iowa 1139, 1142, 226 N.W. 186, and citations.
IV. In his next assignment defendant contends the court erred in admitting statements *532 of the injured George Pappas made while he was awaiting the ambulance in the doctor's office. Lieutenant Warnstadt testified that when he arrived at Dr. Harrington's office, located on the same floor as Pappas' office, Pappas was lying on an examining table, in great pain, and was holding his abdomen. He said Pappas was moaning and said a few words. To the question, "And what did he say", defense counsel objected, contending no proper foundation was laid to show it a part of the res gestae, or a dying declaration. The objection was overruled, and the witness related that "He said he had been stabbed in the stomach by Mr. Drosos. He said, `For God's sake, hurry up and get a doctor", and we told him the ambulance was on the way." The ambulance arrived in about ten or fifteen minutes and took Pappas to the hospital. The record further disclosed that the witness had gone to the doctor's office in response to a call for help by the office receptionist immediately after the attack.
Declarations and exclamations of the person injured are admissible in evidence where they are so connected with the crime as to constitute a part of the res gestae, and this is true whether they incriminate the accused or whether they exculpate him. State v. Sommer, 249 Iowa 160, 86 N.W.2d 115; State v. Berry, supra, 241 Iowa 211, 40 N.W.2d 480; State v. Stafford, 237 Iowa 780, 23 N.W.2d 832; 3 Underhill's Criminal Evidence, 5th Ed., § 652; 22A C.J.S. Criminal Law §§ 670, 671. Spontaneity and such closeness of connection with the transaction as to exclude any presumption of fabrication are the essentials. State v. Sommer, supra, and cases cited therein.
We find no abuse of discretion in permitting this testimony for it was clearly within a period when no reasonable presumption of fabrication is plausible. The replies given by Pappas were natural declarations, spontaneously and instinctively made under the influence of the event. As such, they were properly received. State v. Sommer, supra; State v. Stafford, supra, and cases cited.
V. Defendant complains of the trial court's refusal to take the charge of first degree murder from the jury and of its failure to instruct the jury on the offense of manslaughter. The rule is well settled in Iowa that the court need not and should not instruct on manslaughter when the record reveals no element of such offense. State v. Woodmansee, 212 Iowa 596, 616, 233 N.W. 725; State v. Troy, 206 Iowa 859, 866, 220 N.W. 95, 221 N.W. 370. It is the state's contention that under the evidence the jury could only have found defendant guilty of first degree murder, second degree murder, or not guilty. It contends the element of the crime of manslaughter was entirely lacking. We must agree.
We have said many times that where a defendant has selected a deadly weapon and has had an opportunity to deliberate and intentionally uses it in a deadly manner, it is proper to submit the question of first degree murder to the jury. State v. Nutter, 248 Iowa 772, 81 N.W.2d 20, and citations; State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35, and citations; State v. Woodmansee, supra.
We have also said if there is no testimony tending to reduce the offense below the grade of murder it is not error to refuse to submit the charge of manslaughter. State v. Leedom, 247 Iowa 911, 76 N.W.2d 773; State v. Rutledge, 243 Iowa 179, 47 N.W.2d 251, 50 N.W.2d 801; State v. Woodmansee, supra; State v. Brown, supra, 152 Iowa 427, 132 N.W. 862. There is nothing in this record to indicate an unintentional killing, and we hold the court was right in refusing to submit the manslaughter issue to the jury.
The court did submit the issue of murder in the first degree and murder in the second degree, and the jury found defendant guilty of the greater degree. There is considerable evidence of premeditation. Lieutenant *533 Warnstadt testified as to a conversation with defendant in which he stated he had decided on Sunday, September 4th, to use the knife and gun, that he had gone armed to the office on Tuesday but failed to find Pappas in, that he came back the following morning at 8:30 A.M. to confront Pappas, found him in, argued with him, and then stabbed and shot him. He testified the defendant said, "I was going to butcher him and then shoot him." The evidence abounds with defendant's malice toward Pappas. State v. Myers, 248 Iowa 44, 56, 79 N.W.2d 382.
Manslaughter, of course, is the unlawful killing of a human without deliberation or malice. State v. Johnson, 211 Iowa 874, 879, 234 N.W. 263. Murder is a killing with malice aforethought. Section 690.1, Code 1958, I.C.A. A specific intent to kill is not essential to the crime of second degree murder. State v. Leedom, supra. While defendant denied on the stand that he came to Pappas' office with the specific intent to kill him, there is no other evidence to sustain that contention.
Section 690.2, Code 1958, I.C.A., defines murder in the first degree as "All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, * * * is murder in the first degree, * * *."
It is difficult to find a case where the evidence discloses more clearly the elements necessary to maintain such a charge. We have often stated it is the duty of the jury, if it finds against the defendant, to find him guilty of the highest offense proven by the evidence. State v. Leedom, supra. The jury, in finding defendant guilty of first degree murder, rejected the second degree offense submitted. By rejecting the second degree or lesser offense, we fail to see how defendant was then prejudiced by a failure to submit manslaughter, a lesser offense than second degree murder.
We so held in State v. Troy, supra, 206 Iowa 859, 866, 220 N.W. 95, 98, 221 N.W. 370, in the following words: "Appellant complains that his request for instruction on the law of manslaughter was not granted. * * * He (the court) also submitted the question of defendant's guilt of murder in the second degree. As the jury found the defendant guilty of a homicide of a higher degree than murder in the second degree, which is above manslaughter, any error (as to the existence of which we do not inquire) in instructions on the subject of manslaughter was without prejudice."
Also see State v. Rutledge, supra, 243 Iowa 179, 47 N.W.2d 251, 243 Iowa 201, 50 N.W.2d 801; State v. Woodmansee, supra, 212 Iowa 596, 616, 233 N.W. 725.
The rule we stated in State v. Leedom, supra, is worth repeating. We said at page 917 of 247 Iowa, at page 777 of 76 N.W.2d: "We have repeatedly held that reversible error will not appear because of failure to submit included offenses unless two elements occur: (1), the claimed included offense must be necessarily included in the offense charged; and (2), the record must contain evidence justifying a finding of such included charge rather than a higher offense. * * * It is not sufficient that as an abstract proposition there may be included offenses; the evidence must be such that the jury might find the defendant not guilty of the major crime charged but guilty of one of the inclusions." (Emphasis supplied.)
In view of this record and the fact that both first and second degree murder were submitted to the jury, we are satisfied no prejudice resulted from the court's failure to instruct upon or submit the charge of manslaughter.
VI. In his last assignment of error defendant contends he was not afforded a fair trial. Pursuant to our duty and to counsel's request in oral argument, we have carefully reviewed the record and, although we may understand his frustration, we find *534 nothing therein to indicate defendant did not receive careful and fair consideration of his contentions and his theory of the case. While he may have had some cause to feel aggrieved and to blame Pappas for his losses, yet the evidence clearly justified a finding that he was sane at the time of the attack, that he planned and executed a brutal and unmerciful killing of a human being, and that the punishment was not excessive or unusual. The judgment, therefore, must be affirmed.
Affirmed.
All Justices concur.